## SUPREME COURT.

### Bouton agt. The City of Brooklyn and Briant.

A court of law only provides a redress for a wrong actually sustained. A court of equity grants a preventive within certain limits. The Supreme Court, in which the functions of both are joined, can not extend its power beyond what was possessed by the one or the other previous to the junction of the two.

No court of law or equity can directly annul the proceedings of an inferior tribunal of a municipal corporation, unless they are regularly brought before it upon a certiorari or other appropriate process, addressed to the subordinate body.

This court will not, by the exercise of its powers in equity, even for the purpose of removing an alleged cloud upon title, review the proceedings of subordinate tribunals of municipal corporations.

Some rules laid down for the construction of statutes.

The 30th section of title 4 of the act passed April 4, 1850 (which act constitutes the present charter of the city of Brooklyn), provides that the expenses of constructing wells and pumps, public cisterns, lamp-posts and lamps, flagging side walks, of fencing and filling in lots, *and all other improvements of a like nature*, not before specified, are to be assessed by the street commissioner of the city. *Held*, that the assessment for grading a *public park* (Washington) comes within this clause.

*Kings County Special Term*, 1852. The complaint states that by an act of the legislature of the state of New York, passed the 23d day of April 1835, a public square was laid out in what is called the seventh ward of the city of Brooklyn; that subsequently, by an act of the said legislature, passed April 25, 1845, the location of the said Washington park was changed to what is now called the eleventh ward in said city; and in and

Bouton agt. City of Brooklyn and Briant.

by said acts, the property taken for the said park was declared to be a public park; and the said Washington park was subsequently opened as a public park, pursuant to several acts of the said legislature, passed the 24th day of March 1848. The city of Brooklyn was authorized to create a loan for the payment of the amount necessary to be paid for the land and other matters connected with the said park, and the faith, property and effects of the said city of Brooklyn were pledged, in and by said acts, for the payment of said loan; that defendants, the City of Brooklyn, as such corporation, took the title and possession of said park; that some years after the said corporation had been seized of the title and became in the possession of the said park, they undertook and did enter into contracts for the regulating and improving said park, and did, as the plaintiff from information and belief charges, enter into contracts for the regulating and improving of said park to the amount of upwards of $34,000; and thereafter, without any color, license, or authority by law, proceeded to take proceedings for the purpose of assessing the said amount as a local assessment upon the several lots, pieces or parcels of land benefited thereby, in proportion to the benefit which, in the opinion of the street commissioner of the city of Brooklyn, the same shall derive from, or in justice ought to be assessed for the same; and claims that the defendants, the City of Brooklyn, had no right whatever, under any law of this state, to impose the said assessment upon the plaintiff's property, and the property of said other persons, for the said grading and improving of Washington park; that the said defendants have, without any warrant or authority assessed the plaintiff and the said other persons, and have made the same a local assessment; whereas, by the law of the land, the said park is declared to be a public park, and the expense of grading and improving the same, should be a charge upon the whole city, and not upon any local district in said city; and enumerates other objections to the legality of the assessment; which, with the other facts of the case, sufficiently appear in the opinion of the court.

The defendant Briant, is the collector of taxes and assessments of said city, and had levied upon property of the persons assessed.

Bouton agt. City of Brooklyn and Briant.

The complaint prays for an injunction, restraining the pro-
ceedings both of the city and the collector.

The defendants demur to the complaint; and specify and assign
the following causes of demurrer:

That the complaint does not state facts which constitute a case
for the equitable relief specifically sought, or for any other relief
whatever in equity, or for damages in a court of law.

That the facts stated do not show the proceedings of the de-
fendants to have been either void or irregular.

That the facts stated do not show a cloud upon the plaintiff's
title, or any other grievance or injury suffered or apprehended,
which is the subject of legal or equitable cognizance.

And that said complaint, in these and other particulars, does
not state facts sufficient to constitute a cause of action against
the defendants jointly or severally.

A. CRIST, *for Plaintiff.*

J. M. VAN COTT, *for Defendants.*

S. B. STRONG, Justice.—The assessment of which the plaint-
iff complains, was made by the street commissioner of the city
of Brooklyn for grading Washington park. The plaintiff alleges
that the charter of that city did not authorize such assessment,
and asks that this court shall declare it to be null and void, and
not a lien or incumbrance upon the property assessed; that the
defendant Briant, who is the collector of the taxes and assess-
ments of the city, may be perpetually enjoined from proceeding
under the warrant to him to collect the amount of the assailed
assessment, and that the city of Brooklyn may be required to pay
the damages sustained by the plaintiff by reason of such un-
authorized proceedings.

The first, and as I view the case, the most material question
involved in this controversy is, whether the assessment was
warranted by the statute; that the legislature has the power to
provide for making and enforcing local assessments for local
improvements has been decided, and in my opinion correctly
decided, by the Court of Appeals.

Several acts have been passed relative to Washington park.
They all speak of it as a public improvement, and as public

Bouton agt., City of Brooklyn and Briant.

property. The corporation, therefore, holds it as trustees for a designated purpose, and have not the absolute and unqualified title to it, to dispose of it as they may think proper for general objects. It therefore comes within the range of subjects deemed by the legislature proper for local taxation, and the assessment for the expenses of its improvement is not brought within the objection of taxing the property of one for the benefit of another, which, if well founded, would be fatal to its validity.

The act of April 27, 1847, relative to Washington park (§ 8), authorized the city of Brooklyn to make any improvement on the park or square in connection with it, which they might deem proper. The act of March 24th, 1848, relative to the same park, provided for the payment of the expenses caused by any proceedings then had under the act of 1847, but has no reference to any future improvements. When the act of April 4th, 1850, to revise and amend the several acts relating to the city of Brooklyn, and which constitutes its existing charter was passed, there was no statute providing specially and separately for paying for future improvements to Washington park. The provisions of that act extended to that park as they purported to relate to all such establishments in the city, and they conferred all the power possessed by the corporation or any of its officers to make improvements upon it, or to provide for their payment. The first section of title 4, of that act, authorizes the common council to cause streets and avenues to be opened and widened, and to be regulated and paved, and to cause public squares and parks to be opened, regulated, ornamented and protected, and streets and avenues to be kept in repair, and from time to time to be repaved, or regraded and repaired; to close up and discontinue roads, streets, lanes and avenues; to provide that lamps and lamp-posts be erected, and cisterns made for the purpose of furnishing water in case of fire; to cause sewers and drains, wells and pumps, to be constructed and repaired, and generally to make such *other improvements* in and about such streets, avenues and squares, as the public convenience may require; and it provides that the expenses of all such improvements, except for repairs, shall be assessed, and be a lien upon the property benefited thereby, in proportion to the amount of such benefit. The third

section of the same title provides that the expenses for opening or widening streets, roads, avenues, parks, or squares, shall be estimated and assessed by three commissioners, to be appointed by the County Court or Supreme Court. The 22d and 23d sections of the same title provide that the expenses of regulating, grading and paving, and of regrading and repaving streets, and of constructing sewers and drains, shall be apportioned and assessed by one or more commissioners, to be appointed in like manner. By the 30th section of the same title, the expenses of constructing wells and pumps, public cisterns; lamp-posts and lamps, flagging side walks, of fencing and filling in lots, and all other improvements of a like nature, not before specified, are to be assessed by the street commissioner of the city. The authority to make the assessment in question is claimed under this 30th section.

It was admitted on the argument, by the counsel for the plaintiff, that the power to *grade* this park was conferred upon the corporation by the first section of the fourth title of the act which I have quoted. If so, that section also directs that the expenses of such improvement shall be assessed, and be a lien on the property benefited thereby, in proportion to the amount of the benefit conferred. This, then, confers upon the corporation the power, and imposes upon them the duty of making an assessment to pay for such expenses. The question very naturally suggests itself, whether the legislature would have conferred such power and imposed such duty, without at the same time providing the requisite means for performing the power and discharging the duty. That is not to be presumed. The inference is altogether the other way. Judge Jewett remarks, in Stief vs Heart. (1 *Comst. R.* 30), that when a power is given by the statute, every thing necessary to making it effectual or requisite to obtaining the end, is implied. Probably the remark is too general. Where ordinary common law incidents are necessary to render a power effectual, they may undoubtedly be inferred, although not mentioned in the statute; but when such incidents do not go far enough, and no statutory means are provided to carry the power into effect, it must fail. Where, however, there are provisions in the statute, probably designed to give effect to

Bonton agt. City of Brooklyn and Briant.

the power, but couched in such general terms that the design can not be inferred with certainty, they should receive a liberal construction towards effectuating the power.   That is emphatically true, whereas in this case the statute is remedial and not penal.   Accordingly, Chancellor Kent says (1 *Comment's*, 465) such statutes are to receive an equitable interpretation by which the letter of the act is sometimes restrained *and sometimes enlarged,* so as to meet the beneficial end in view, and prevent a failure of the remedy.   The same accomplished judge and elegant writer says (1 *Comment's*, 461-2); it is an established rule in the exposition of statutes, that the intention of the lawgiver is to be deduced from a view of the whole and of any part of a statute taken and compared together (1 *Co. Lit.* 301, *a*).   The real intention, when accurately ascertained, will always prevail over the literal sense of terms.   *Scire leges, hoc non est verba harum tenere sed vim ac potestatem*, and the reason and intention of the lawgiver will control the strict letter of the law when the letter would lead to palpable injustice, contradiction and absurdity.   When the words are not explicit, the *intention is to* be collected from the context, from the occasion and necessity of the law: from the necessity felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant to reason and good sense.   The 30th section of the 4th title of the act which I have quoted, authorizes the street commissioner to assess (as he has done in the instance under consideration) the expenses of constructing wells and pumps, public cisterns, lamp-posts and lamps, flagging side walks, of fencing or filling in lots, and all other improvements of a *like nature,* not before specified; and the question is, whether grading a park is such improvement—clearly it is an improvement, and as clearly it had not been before specified in the statute.   It had been included in general terms.   Was it, then, ' like ' the other improvements specified in the same section?   It could not have designed that it should resemble each of them in every respect, for in some particulars such specified improvements differ materially from each other.   There is not much resemblance between constructing a lamp-post and filling in lots.   The statute probably had reference to some classification made by its own pro-

visions rather than to any designation by 'nature,' according to the more usual interpretation of that word. There is very little natural similitude between the subjects specified in the 30th section; but the statute places them in the same class with each other, and in some important particulars, with the improvement in question. They are alike local in their benefits, and equally call for local assessments to pay for them—at least, such was the opinion of the legislature, as they were all included in the same category in the first section of the title. They are all, too, improvements upon property already belonging to the public, and do not require the assumption of private property for public purposes. In this particular they differ from the improvements specified in the third section, where the assessments are to be made by three commissioners appointed by a court, and are not subjected to the "one-man-power." The number of the commissioners and the manner of their appointment, when private property is taken for the use of the public, and the damages sustained by the owners are to be estimated and determined, are directed by the constitution, and it was in obedience to the constitutional provision, as well as in reference to the importance of the duties to be discharged, that the legislature guarded these public works more cautiously than the others specified in the statute. It does not very clearly appear that the legislature in classifying the improvements had reference to the greater or less expenditure which they might create. Public works of the same nature may vary from each other most essentially in their costliness. The expense of grading a park depends upon its size and the unevenness of the surface. If it should be of small extent, and the ground should be even and correspond with the level of the surrounding streets, the expense of grading it would be inconsiderable, much less than that caused by filling in lots to which, in many particulars, it has a strong resemblance. Neither is it probable that the legislature had any special reference to the extent of the district to be affected by the improvement and assessed for its expense. Some of those enumerated in the last class, such as flagging side walks and fencing and filling in lots, might extend over a large district, whilst constructing wells, pumps and cisterns could benefit but comparatively a small number.

Bouton agt. City of Brooklyn and Briant.

After all, however, the points of resemblance between the improvement in question and those particularly specified, are not sufficiently numerous or strong to lead by their own weight to any certain conclusion; but, taken in connection with the evident design of the legislature, that such improvement should be made and the consequent expenses paid through this species of local taxation, and the fact that no authority is given in any other part of the statute, or (as far as I know) any where else, to raise the requisite funds, they are sufficient to warrant the conclusion which I have adopted, that the assessment in question was authorized by the statute, and is consequently valid.

The other important question involved in this controversy is, whether if the assessment had been invalid the plaintiff would have been entitled to the relief demanded in his complaint. I shall consider this question, as the determination of it will be material, if the opinion which I have adopted upon the point which I have already discussed should be erroneous.

The relief demanded, except the compensation in damages, can be awarded by this court, if at all, only in the exercise of its equitable jurisdiction. Damages may be given as a part of a remedy strictly equitable; and when, as in this case, the principal relief demanded is of that class, the claim for such damages partakes of the same character. Is it, then, competent for this court, under the additional powers recently conferred upon it, to award the desired relief? It has entire cognizance of cases both at law and in equity. The distinction between legal and equitable remedies has been abolished by the Code. The mode is identical, but the limits of either have not been extended. This court, in administering equity, is confined to the cases in which courts of equity had jurisdiction previous to the late change. If not, the question may well be asked, where will it stop?

Abstract ideas of equity are somewhat indefinite, and there could not be an uniform rule governing the several branches, and numerous judges of this court. We have not yet necessarily arrived at that degree of uncertainty and consequent confusion, and I trust that we never shall. The most that can be effected by the change is, that when a plaintiff states a case which entitles him to some redress in the law, he shall not be turned out

of court because he may be mistaken in the species of redress which he has demanded in his complaint. But he is still bound to state his case in such a manner as to enable the court to grant him some specific redress, according to old established principles. They have not been changed.

Now, no court of law or equity could directly annul the proceedings of an inferior tribunal of a municipal corporation, unless they were regularly brought before it upon a certiorari, or some other appropriate process addressed to the subordinate court or body. Nor could a court of law in any other way make any order or render any judgment generally sustaining the action of such tribunal or body? That could be done only in a court of equity. This court has now the same powers; but neither that, nor the class of cases over which it can be exercised, has been increased Now, in this case, no process has been issued to the corporation to bring up specifically the proceedings complained of, nor are they here in such a manner as to enable this court to set them aside: but an appeal is made to the court in the exercise of its power in equity, to declare their nullity, and to prevent their operation. Can this appeal be successful according to the established rules which have heretofore prevailed in a Court of Chancery? The plaintiff claims the desired interposition of this court, because, first, he has no other remedy; secondly, the assessment casts a cloud upon his title to the land affected by the lien; and third, it will prevent a multiplicity of suits. These are all valid causes for relief in proper cases. The question is, whether this is one of that class?

The plaintiff, and those who are associated with him in this suit, have another, and I think an adequate remedy for any wrong which they may have sustained by the assessment. If it was a judicial proceeding, it can be reviewed on certiorari, and set aside, if invalid, from a want of jurisdiction. If, as is alleged, it is void for that cause, and the moneys should be collected and paid into the city treasury, they could be recovered by the payers, in an action against the corporation. True, it might be better in this case to prevent the wrong than to allow it to go on, and when perpetrated, redress it. But the law does not regard particular cases; it is necessarily applicable to the exigencies of

Bouton agt. City of Brooklyn and Briant.

classes rather than of individuals. As a general rule, it would be injudicious to interfere to prevent apprehended wrongs; and the law, therefore, limits such interference to cases where the complaining party would be without adequate redress.

If the assessment is void from a want of the requisite power to make it, it can not constitute a lien upon the plaintiff's real estate. It might, nevertheless, be a cloud upon his title, were it not for the fact that the objection, if any, is apparent on the face of the proceedings. They show that the assessment was made by the street commissioner for grading a park, and if the statute gave no authority for the procedure, its nullity must be evident to any one examining the papers, as all are supposed to know the law. In such cases the court does not interpose to remove the cloud, because, if there be any, it is so thin that it can do no serious injury. Besides, it was decided by both the late Court of Chancery and the Court for the Correction of Errors, that a court of equity will not, even for the purpose of removing an alleged cloud, review the proceedings of subordinate tribunals of municipal corporations (Mooers vs. Smedley, 6 *Johns. Ch. R.* 28; Mayor, &c. of Brooklyn vs. Messerole, 26 *Wend.* 132). If it was competent for this court under the existing system, to extend its jurisdiction in this particular to that class of cases, it would be *highly inexpedient to do so, as it would constitute a* source of excessive and unnecessary litigation.

The remaining question is, whether, supposing the assessment to be invalid, the circumstances attending it present a proper case for the desired interposition of this court to prevent a multiplicity of suits. The practice was originally introduced for the protection of any one who might be threatened with the attacks of numerous litigants having, in common, claims against him, based upon the same facts and principles. In this case there has not been any such suit nor is any threatened. The plaintiff apprehends that something may be done which will lead to a law suit, and probably to many. But that is not enough to justify the interposition of this court by way of prevention. That is not granted until the plaintiff has established his right by at least one successful suit at law; a bill of peace is sometimes entertained to settle the rights of several parties in a single suit brought

under the direction of the court. But the plaintiff does not ask for that relief, nor could this court direct a suit to be brought before any cause of action had actually accrued. The plaintiff does not ask this court to prevent, by judicial action, a multiplicity of suits, but to prevent the consummation of an act which might give rise to litigation. That is not done except when the evil threatened would, if perpetrated, be irremediable, or, at any rate, be so extensive as to clearly take it out of the ordinary class of private wrongs. Neither is the case in the action before me.

Upon the whole, I am satisfied that the facts set forth in the complaint are not sufficient to entitle the plaintiff to the remedy he demands. I rest my opinion upon the following principles. A court of law only provides a redress for a wrong actually sustained. A court of equity grants a preventive within certain limits, which do not include the case presented by the plaintiff. A court in which the functions of both are joined, can not extend its power beyond what was possessed by the one or the other previous to the junction of the two. And an assimilation of remedies can not extend the operation of either beyond the limits assigned to the most extensive, when each operated in its own separate sphere.

There must be judgment for the defendants on the demurrer, and the complaint must be dismissed.