# White, *et al. v.* Hewlett.

*Petition in Equity to Enjoin Enforcement of Order of Board of Revenue.*

1. *Equity; county courthouse; court of county commissioners.*— Under the provisions of our statutes, the court of county commissioners, or board of revenue, have control of courthouses and other public buildings of the county, with power to assign rooms in the courthouse to various officers, and to change such assignments whenever they deem it expedient or proper to do so. And, as long as such court acts within the limits of its authority, and in good faith, its action cannot be assailed, and no other tribunal can intervene or control its action.

2. *Equity; pleading and practice.*—Without pleading or allegation to support it, evidence will not entitle a party to relief predicated upon it.

3. *Equity; jurisdiction.*—Equity is without jurisdiction to correct the errors of another tribunal, vested with discretionary powers under statutory powers; if such tribunal is without authority in the premises, the remedy is at law, by writ of *certiorari*.

[White, *et al.* v. Hewlett.]

APPEAL from Chancery Court of Cullman.

Heard before the Hon. W. H. SIMPSON.

The petition in this case was filed by the appellee, A. E. Hewlett, as register in chancery for Cullman county, against the appellant and others, as members of the board of revenue of said county. The averments of the petition were to the effect that the petitioner then had, as his office as such register, a room in the courthouse of said county, but that the said board of revenue had ordered him to vacate it, giving him permission to move into another office, which was then occupied by the tax collector and tax assessor of the county, and had served petitioner with notice that, unless he removed within thirty days, he would be punished for contempt. That the petitioner was without authority or power to dispossess the assessor and collector, and that the only other room in the courthouse, which was not permanently occupied, was a jury room, and that, if he moved into such jury room, he could not use the room or attend to his official duties during the session of any court which organized a jury, and that moreover, his records would be in danger of being lost, mutilated and destroyed; he would be greatly hindered and obstructed in the performance of his official duties.

The petitioner prayed that the board of revenue be enjoined from interfering with petitioner's possession of his present office, and that its orders in the premises be annulled.

GEO. H. PARKER and JOHN C. EYSTER, for appellants.

BROWN & HIPP, *contra.*

DENSON, J.—In this case the respondents made a motion to dismiss the petition for the want of equity, answered the petition and incorporated in the answer a demurrer to the petition. They also moved to dissolve the injunction. On the 6th day of March 1903, the chancellor rendered a decree, overruling the motion to dismiss, the demurrers and the motion to dissolve the injunction.

From that decree, the respondents prosecuted an appeal to this court. The Court dismissed the appeal,

upon the ground that the order made by the chancellor was not such an one as would support an appeal.—*White et al v. Hewlett,* 140 Ala. 665.

The parties then took testimony in the case and, upon the hearing on the pleadings and proof, the chancellor rendered a final decree, granting the relief prayed for by the petitioner. From the final decree, the present appeal was taken. The correctness of the decree overruling the motion to dismiss the petition, the demurrer to the petition and the motion to dissolve the injunction, is challenged by several assignments of error. The decree on the merits has also been assigned as error.

When the case was here on the former appeal, Mr. Justice HARALSON prepared an opinion in the case, but the motion to dismiss the appeal having been granted, the opinion was not put out. We have carefully gone over the opinion, in connection with the record on this appeal, and have concluded that it correctly states the substantive law of this case, and we therefore now adopt it as a part of the opinion of the Court:

"By an act of the legislature, approved the 18th of February, 1897, 'To establish a board of revenue in lieu of the court of county commissioners, for Cullman county, and to define the powers and duties of said board,' it was provided, in Sec. 11, 'That the said board shall have authority to direct and control the property of the county, as it may deem expedient according to law; * * * to have and exercise all such powers as are now, or may hereafter be, conferred, and discharge all such duties enjoined upon the courts of the county commissioners of the State by any general law, not inconsistent with this act, and * * *. to punish for contempt by fine, not exceeding ten dollars, and imprisonment, not exceeding six hours.'"

"Section 1402 of the Code provides, that 'The court of county commissioners have the control of all property belonging to the county, etc.' The county buildings are to be erected and kept in order and repair at the expense of the county, under the direction of the court of county commissioners, which court is authorized to make all

necessary contracts for that purpose.—Section 1403. It is the duty of the court of county commissioners to erect a courthouse, jail, and any other necessary county buildings—Section 1405; and 'When the courthouse of any county is damaged or destroyed, or is undergoing repair, so as to interfere with the sittings of the courts, or the occupancy of offices therein, such courts may sit and such offices may be kept at such other place in the city, town or village, where such courts and offices are required by law to be held and kept, as may be provided by the court of county commissioners or board of revenue; or, in case of emergency, such place as may be provided by the judge of probate, sheriff and clerk of the circuit court.'—Section 1406."

"Section 1404 provides, that 'The sheriff has charge of the courthouse, and must prevent trespass, keep out intruders, and keep it and the grounds attached thereto in order; reporting from time to time the repairs required to the court of county commissioners.' This section gives him the authority to do what is prescribed, and does not interfere with or curtail the power of the court of county commissioners or board of revenue to control the courthouse."

"From these statutory provisions, it seems clear, that the legislature intended to place the public buildings of the county within the control of the court of county commissioners, or boards of revenue, as long as these tribunals control according to law. It places it nowhere else, or with any other person, individual or corporation. That it is necessary to be reposed in somebody, cannot be questioned, and it would seem that this court is the most suitable body known with which to vest such control. Somebody must be intrusted to provide a courthouse, and to assign the different officers their appropriate rooms therein, or there would be confusion and conflict. But the language of the statutes, as stated, do not leave us in doubt that this court is the one with which these powers have been lodged by the legislature. The words 'direct and control,' as employed in the statute, confer on this court all the power in this direction that is best in the management of the county's prop-

erty and, so long as this tribunal directs and controls the same according to law, no other tribunal has any authority to interfere. This power necessarily includes, not only the right of original assignment of rooms to different officers, but the authority to change them from one room to another, whenever deemed expedient and proper by said court to do so. If the court room of the circuit or chancery court, for instance, were to appear to the commissioners to be too small, or uncomfortable, or unsuited for any reason for the purpose, who can doubt or question the authority of this court, to provide a larger and fitter place for these officers and the public? This does not imply, of course, that while the circuit or chancery court is actually sitting, the commissioners may in an arbitrary and improper manner interfere with the due administration of justice. We are not left to presume that such a course would ever be pursued by them. —*Hallifield v. Robbins*, 79 Ala. 419, 422; *Jefferson Publishing Co. v. Hilliard*, 105 Ala. 576, 578."

"We find a similar question decided by the California court, under powers conferred on the supervisors similar to that conferred by our statutes on the court of county commissioners or board of revenue. The suit was by the county, to recover possession of certain rooms in the courthouse, assigned as 'judges' chambers,' which the defendant withheld from the county, the possession of which it needed for the county purposes. In defining the powers of a court of supervisors, analogous to our court of county commissioners, the court quoted and approved the decision of the Supreme Court of Ohio, where it was said by that court, 'It may be laid down as a general rule, that the board of county commissioners is clothed with the authority to do whatever the corporate or political entity, the county, might (do), if capable of rational action, except in respect to matters the cognizance of which is exclusively vested in some other officer or person.'—*Shanklin v. Commissioners of Madison County*, 21 Ohio St. 583. The California court added, 'It is the duty of the county to erect and furnish a courthouse, and to provide necessary offices for the several

county officers. In performing this duty, the county acts through its board of supervisors, precisely as a private corporation acts through or by its directors, and the action of such board in providing 'Suitable rooms for county purposes,' and in assigning the particular rooms which shall be occupied by different officers, is the act of the county. And this power is not exhausted when once exercised, but is a continuing one, and the assignment of offices may be changed whenever, in the judgment of the board, public convenience will be promoted by the change. The authority to provide suitable rooms for county purposes necessarily carries with it the power to designate the room which is suitable for the transaction of any particular part of the public business; and, as before stated, this power is intrusted by law to the judgment and discretion of the board of supervisors, and the judge of the superior court has no more right to select the particular room in the courthouse, which he will occupy as his chambers than has the clerk or the sheriff to choose the room, which he will occupy as his office. The law certainly confers no authority upon him to take possession of any room in the courthouse for his chambers when such room has been assigned by the board of supervisors to any other county officer. The power of the board is necessarily exclusive.' To the same effect is *Platter v. The Board of Commissioners,* 103 Ind. 360. As to these matters, it is well settled that so long as the commissioners' court acts within the limit of its authority and in good faith, its actions cannot be assailed, (*Hays v. Ahlrich,* 115 Ala. 239, 348). and no other tribunal can intervene to revise or control its action.—*Commissioners 1. Moore,* 53 Ala. 27; High on Inj. (3rd ed.), § 1240; 7 Am. & Eng. Ency. Law (2nd ed.), 996, 1009."

"It may be added that the probate judge is required to keep his office at the courthouse, (Code § 3361) and so of the sheriff, (§ 3737), and clerk of the circuit court, (§ 932). It is, therefore, the duty of the commissioners to provide each of these officers with a room in the courthouse; but the register, who complains at the action of the board here, is not required in terms to keep his office in the courthouse. The only provision on the subject is,

that he 'Must keep his office at the place at which the court of which he is register is held.'—§ 657. This does not mean in the court room, where the chancellor holds his court, nor does it mean necessarily in the courthouse, but in the city, town or village, where the court is held. We apprehend that it is proper for the commissioners to assign him a room in the courthouse, but they might do it outside of that building, if the necessities of the county required it. Certainly, he has no right to complain, that he is assigned a room in the courthouse, other than the one he chooses, if, in the judgment of the board of revenue, the public convenience will thereby be promoted. When ordered by the court to change his room, and give it up to other officers, and remove into another, it is his duty to obey, and, if he fails to vacate the one he is ordered from, it is not in the power of the chancery court to interfere and prevent the enforcement of the orders of the commissioners by injunction. It does not appear from the pleadings, that the board acted, in issuing its order, in bad faith towards petitioner, nor for any other reason, than that the change it ordered was for the public convenience, involving no interference with the authority of the chancery court. Indeed, it does appear that it kept clearly within the line of its authority."

The evidence, which was taken in the case, was directed mainly to the question of convenience or inconvenience to the public, which execution of the order made by the board of revenue would work. And, upon this proposition, the final decree of the court must have been based, because there is no allegation in the petition or information, that the board in making the order was actuated by malice or other improper motive, even if that question could be presented. Evidence, without pleading or allegation to support it, will not entitle a party to relief; relief cannot be predicated upon it.

If, as we have held, the board of revenue had the statutory authority to make the order, in making it, the question of public convenience was involved and determined, and it would seem that a court of equity would have no jurisdiction over the subject-matter for the purpose of

opening up that question and determining it anew; in other words, that it is not the province of equity to correct the errors of another tribunal, vested with discretionary power and proceeding under statutory authority.—*Bouton v. The City of Brooklyn,* 7 How. Pr. 198; *Thacher v. Dusenbury,* 9 How. Pr. 32.

If the board of revenue had no power or authority to make the order, then the petitioner had open to him a plain and adequate remedy at law, by the writ of common law *certiorari,* and equity was without jurisdiction to interfere.—16 Am. & Eng. Ency. Law, 377c.

So, upon either horn of the dilemma it must be held, that the chancery court was without jurisdiction of the subject-matter involved, and, being without jurisdiction, it follows that the decree rendered in the case was void. It also follows that the decree being void, it will not support an appeal.

The appeal is dismissed.