[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1294 
This is an appeal from a judgment entered in a statutory validation proceeding initiated by the City of Hoover, Alabama (the "City"), pursuant to the provisions of Ala. Code (1975), §§ 6-6-750 et seq., to validate general obligation warrants in the principal amount of $12,150,000. The petition was filed against the taxpayers and citizens of the City, and an answer was filed by the district attorney. Joe M. O'Grady and Daniel R. Farnell also responded by filing an answer entitled "Showing of Cause." Pursuant to an order of the trial court, O'Grady and Farnell were named intervenors and parties defendant in the validation proceeding.
The validation hearing was held before the Honorable Marvin Cherner in the Circuit Court of Jefferson County on May 7 and 8, 1987. After receiving briefs from attorneys for both sides, the trial court rendered its "Findings of Fact, Conclusions of Law and Final Judgment," in which it validated and confirmed the warrants and all agreements and proceedings initiated by the City. The district attorney participated in the proceedings below, but did not join the appellants in this appeal.
The underlying facts are undisputed. On April 6, 1987, the elected officials of the City of Hoover adopted Ordinance No. 87-602 authorizing the issuance of general obligation warrants in the principal amount of $12,150,000. These funds were to be donated to the Public Park and Recreation Board of the City of Hoover (the "Park Board") and were to be used by the Park Board for the acquisition and construction of a public park, athletic field and stadium, and related improvements. The Park Board is a public corporation, and, as the owner of the stadium, it entered into a lease agreement permitting the Birmingham Baseball Club, Inc. (the "Barons"), to use the stadium for playing baseball during the minor league baseball season for ten years with an option to renew the lease for an additional five-year period.
Additionally, the Park Board and the Barons have entered into a management agreement for the stadium to be utilized for other recreational, charitable, and civic events. Under this agreement, the Barons will have sole use of the stadium for the management and conducting of events other than the playing of professional baseball. The lease and the management agreement were executed contemporaneously, and when read together provide for a year-round lease with a duration of ten years with an option to renew for an additional five-year period.
The trial court made the following pertinent findings of fact:
 "11. The Warrants will be issued to provide funds for the acquisition and construction of public park and recreational facilities, specifically a public park, athletic field and stadium and related improvements (the 'Project') to be owned by The Public Park and Recreation Board of the City of Hoover. . . . The Board will acquire and construct the Project in the City with the funds provided by the City.
". . .
 "13. The Board will own the Project and will lease the same to Birmingham Baseball Club . . . to play baseball during *Page 1295 
baseball season pursuant to a lease agreement . . . between the Board and the Baseball Club.
 "14. The Board will own the Project and will operate the same for other public events pursuant to a management agreement . . . between the Board and the Baseball Club . . .
". . .
 "17. There is sufficient evidence to support the findings and determinations of the Governing Body contained in the Authorizing Ordinance. There is no evidence of fraud, collusion or unfair dealing in connection with any of the aforesaid documents or proceedings. Neither the size of the stadium nor any other evidence offered establishes any abuse of discretion by the elected officials in carrying out their duties."
From these findings, the trial court reached the following conclusions of law:
 "1. All actions and things required under the provisions of the Validation Act to be had and done in this proceeding preliminary to the making of the findings of fact, conclusions of law and judgment of this Court herein contained, have been had and done in the manner provided by the Validation Act. The City and the Governing Body have power to institute and conduct this proceeding and have duly authorized the same.
". . .
 "8. Although the answers filed raise the question as to whether the proceedings authorizing the issuance of the Warrants were properly adopted, at the hearing the District Attorney and, with less enthusiasm, counsel for the named intervenors, conceded their proper adoption, but argued that the Warrants should not be validated because (a) their issuance would be in violation of Section 222 of the Alabama Constitution as no election had been held authorizing their issuance and (b) the proposed use of the proceeds of the Warrants would be in violation of Section 94 of the Alabama Constitution as amended by Amendment No. 112. The Court has carefully reviewed the cases cited by counsel for the named intervenors and notes that no case was cited in which debt instruments designated 'warrants' and bearing the indices thereof have been held to be in fact 'bonds' within the meaning of Section 222 of the Constitution. On the contrary, in Parsons v. City of Birmingham, 223 Ala. 610, 137 So. 665 (1931), the Alabama Supreme Court found that the debt obligation in question (a promissory note under seal) would be a bond 'as legally defined' but held that no election was required to authorize its issuance. In Parsons, the Court stated:
 " 'It certainly cannot be affirmed that the purpose of the Constitution was to prohibit the creation of city indebtedness without an election. There is nothing in the Constitution to prohibit the creation of debts to the limit which it fixes, without the sanction of such election. The Constitution, § 222, only checks the issuance of a certain form of security for that debt, but not the creation of the debt. It has been held not to prohibit the issuance of warrants, under seal, though interest bearing and due over a period of years.' Citing Littlejohn v. Littlejohn, 195 Ala. 614, 71 So. 448.
 "The Warrants are similar to those discussed in the leading decision in this area, Littlejohn v. Littlejohn, supra. Here, as in Littlejohn, the debt obligations are warrants and do create an indebtedness chargeable against the applicable constitutional debt limit, but they may be issued without an election.
 "Counsel for the named intervenors has cited several cases in which instruments which were bonds were held by the Alabama Supreme Court not to create a debt under the applicable constitutional provisions because they were payable solely from the revenues of a specified municipal enterprise, such as a water system. The Alabama Supreme Court further held that such bonds were not 'bonds' within the meaning of Section 222 requiring an election prior to their issuance. For example, see Opinion of the Justices, 252 Ala. 583, 42 So.2d 348 (1949). However, it does not follow that *Page 1296 
under Alabama case law and statutes all debt instruments which are not limited in payment to revenues from a specific municipal enterprise, but are payable from general taxes and revenues of the municipality, thereby become 'bonds' and subject to an election prior to their issuance. The statement of the Alabama Supreme Court in Parsons noted above clearly negates this argument and sets forth applicable Alabama law on the point. It is consistent with, and a continuation of, the principles applied by the Court to 'warrants' in Littlejohn.
 "As the Court further noted in Parsons, 'In ascertaining the meaning of constitutional and statutory terms, we should construe them in light of accepted and well known trade customs.' As early as Littlejohn, the Court was able to state that the distinction between warrants and bonds was well established. That distinction does not turn upon whether debt is created or whether the source of payment is limited to the revenue from a specified enterprise or tax. As evidenced by the action of the Alabama Legislature in 1986 permitting warrants and other non-bond evidences of indebtedness to be payable over a period of up to thirty years, the distinction continues settled in Alabama law. See Act No. 86-712, Acts of Alabama, 1986 Extraordinary Session of the Alabama Legislature.
 "9. The Warrants and the provisions thereof and the Authorizing Ordinance proposed to be validated do not violate the provisions of Section 93 or Section 94 of the Constitution. . ..
 "The Alabama Supreme Court has repeatedly held Section 93 is applicable only to the State . . . and that there can be no violation of Section 93 or Section 94 by the donation of state or municipal funds or properties to a public corporation as is proposed to be done with the proceeds of the Warrants. [Citations omitted.] The subsequent exercise by such public corporation of its statutory powers with respect to the leasing and management of properties so acquired, as here proposed, [does] not change the foregoing conclusion.
". . .
 "12. The use of the proceeds of the Warrants as contemplated by the Authorizing Ordinance is authorized under Alabama law. The City is expressly authorized to provide funds for the acquisition and construction of a public park, athletic field and stadium (the 'Project') which would be owned by The Public Park and Recreation Board of the City of Hoover (the 'Board'). The Board is expressly authorized to acquire and construct the Project.
". . .
 "14. The Board is expressly authorized to own the Project and to lease the same in the manner in which it has done so to Birmingham Baseball Club . . . to play baseball during baseball season pursuant to a lease agreement . . . between the Board and the Baseball Club. No election is required for the approval and execution of the Lease Agreement.
 "15. The Board is expressly authorized to operate the Project for other public events in the manner in which it proposes to do so pursuant to a management agreement . . . between the Board and the Baseball Club.
". . .
 "17. The approval and/or execution by the City and the Board of the Lease Agreement, the Management Agreement . . . were in every respect proper, legal, within the power of the City and the Board to approve and/or execute, were not arbitrary or capricious, do not constitute a gross and palpable abuse of discretion, do not constitute unjust enrichment of the Baseball Club . . . and do not impose an inequitable and unconscionable burden on the taxpayers and citizens of the City."
Pursuant to these conclusions, the trial court entered an order validating and confirming the warrants and the proceedings, provisions, covenants, and agreements in connection therewith. The appellants assert that the trial court erred in finding that the proposed general obligation warrants *Page 1297 
were not "bonds" and were not subject to the provisions of § 222 of the Constitution of Alabama. Also, the appellants contend that the transactions violate § 94 of the Constitution of Alabama, and that an election was required prior to the execution of the lease between the Park Board and the Barons. We affirm the judgment of the trial court.
Section 222 of the Constitution of Alabama provides that no bonds shall be issued under the authority of a general law unless such issue of bonds be first authorized by a majority vote by ballot of the qualified voters. For more than 80 years, this Court has consistently held that § 222 is not applicable to interest-bearing warrants. See Matkin v. MarengoCounty, 137 Ala. 155, 34 So. 171 (1903); Talley v. Comm'rs'Court of Jackson County, 175 Ala. 644, 39 So. 167 (1905);Littlejohn v. Littlejohn, 195 Ala. 614, 71 So. 448 (1916);Parsons v. City of Birmingham, 223 Ala. 610, 137 So. 665
(1931).
This statement of law is not contested. However, it is the appellants' contention that the instruments proposed to be offered by the City, although labeled "General Obligation Warrants," are, in reality, by the terms and conditions of the sale, bonds, and, for this reason, are subject to the provisions of § 222. Although bonds and warrants are mutually exclusive in that one instrument cannot be both a bond and a warrant, these two instruments do not encompass the entire field of negotiable or commercial instruments. If an instrument fails to meet the criteria of a warrant, it is not automatically a bond, and vice versa. The instrument may be a promissory note, a check, a draft, or one of a number of other instruments. Therefore, we focus our attention on the characteristics of bonds and will apply our analysis to the proposed instruments in order to properly determine whether they are bonds, since only bonds are subject to the restrictions of § 222 of the Constitution of Alabama.
We begin our analysis by applying the factors as set forth in Littlejohn to the proposed instruments in the instant case. The following excerpt from Littlejohn, supra, 195 Ala. at 617,71 So. at 449, illustrates the basic distinction between a bond and a warrant:
 "It must be regarded as settled that the issuance by the authority of a commissioners' court of interest-bearing warrants on the county treasurer, payable at stated times in the future, to pay for public buildings, public roads and bridges, is not the issuance of bonds by the county within the provisions of section 222 of the Constitution; and that commissioners' courts are competent, unless restrained by the debt limit fixed in Section 224 of the Constitution [citations omitted], to issue interest-bearing warrants of the character above described [citations omitted].
 "A county warrant 'is the command of one duly authorized officer to another, whose duty it is to obey, to pay, from county funds, a specified sum to a designated person whose claim therefor has been allowed by the court of county commissioners.' [Citations omitted.] Such a warrant has not the attributes of commercial paper, and is not assignable, so as to be made the foundation of an action at the suit of a transferee. [Citations omitted.]
 "As employed in section 222 of the Constitution, the term 'bond' signifies an obligation in writing to pay a sum of money. It imports, necessarily, a promise to pay a certain sum of money at a future date, and commonly bears no specific designation of the person or entity in whose favor its promise runs. Bonds authoritatively issued by agencies of the governments are commercial paper and are capable of assignment and of transfer, and the succeeding owner may of course found an action upon it. [Citations omitted.] There is, hence, a marked fundamental difference between county warrants and the county bonds to which section 222 of the organic law makes governing reference. The fact that both county warrants and county bonds may be made presentable and payable at a future specified date, and that they bear interest for prescribed periods does not suffice to eliminate the stated *Page 1298 
characteristic distinctions between them. One, the warrant is an order to pay when in funds; while the other, the bond, is a promise to pay."
A thorough reading of the provisions of Ordinance No. 87-602 reveals that the proposed instruments are very different from the warrants at issue in Littlejohn. In general, a warrant is an order or direction to pay when in funds, while a bond is considered a promise to pay that is enforceable without being conditioned upon the obligor's being in funds. The appellants agree with this distinction; however, it is their position that the instruments in the instant case do not comport with this distinction. It is indisputable that the proposed warrants contain the classic language acknowledging a debt and ordering the treasurer to pay the payee. However, the language of the subsequent clauses makes the instruments more than a mere direction to pay when in funds.
The express language of the ordinance provides that the City "[H]ereby acknowledges itself indebted to . . . and hereby orders and directs the Treasurer of the Municipality to pay to said payee. . . ." The City is to maintain a fund at a depository bank, and the City "has obligated itself to pay or cause to be paid into said fund from the taxes, revenues or funds of the [City] sums sufficient to provide for the payment of the principal of and interest on the Warrants as the same mature and come due." In addition, the ordinance provides:
 "It is hereby recited, certified and declared that the indebtedness evidenced and ordered paid by this warrant is lawfully due without condition, abatement or offset of any description. If on any principal or interest payment date the balance in the warrant fund is insufficient to pay the principal of and interest on the warrants due and payable on such date, the Municipality shall forthwith pay any such deficiency into the warrant fund. The depository shall sell and reduce to cash a sufficient portion of [the investments of the warrant fund] whenever the cash balance in the warrant fund is insufficient to pay the interest and principal requirements on the Warrants."
It is the City's contention that the proposed instruments cannot be bonds since they contain no express language whereby the City "agrees" or "promises," in so many words, to pay any stated sum to the registered owners. There should not be any significance given to the fact that the proposed instruments do not contain an express "promise." Section11-1-17, Ala. Code (1975), contains a statutorily approved form for a warrant, and that form contains an express "promise to pay." In other words, the nature of the instrument is determined from the language as a whole and is not dependent upon the inclusion or exclusion of one particular word.
The express language of the ordinance constitutes more than a mere "order to pay when in funds" and is very similar to the traditional "promise to pay" language used in bonds.
Another essential characteristic of a "bond" is the nature or kind of contractual obligation inherent in and represented by a "bond" — that is, a promise or obligation to pay money; "warrants" do not have this feature. They key remedy available to a bondholder — i.e., the power to sue on the contract represented by the issuer's promise to pay — is not available to the holder or transferee of a warrant. A warrant "possesses no element of a contract." Savage v. Mathews, 98 Ala. 535,13 So. 328 (1892). Mandamus is the appropriate remedy against the treasurer forcing him to apply to the payment of a warrant "funds actually in hand which he ought to apply as payment." Through mandamus, a court may compel a treasurer to carry out his official duty.
Section 16 of the ordinance expressly provides that "The terms, provisions and conditions set forth in this ordinance constitute a contract between the [city] and the registered owners of the Warrants and shall remain in effect until the principal of and interest on the Warrants shall have been paid in full." In addition, Section 13 of the ordinance provides that the City "will pay . . . all expenses incident to the *Page 1299 
collection of any unpaid portion thereof, including a reasonable attorneys' fee."
These provisions are contrary to the proposition that a warrant holder's exclusive remedy is mandamus. At oral argument, the City conceded that a warrant holder's remedy is mandamus, as established by law. However, the express provisions of the ordinance provide that the agreement constitutes a contract, thus allowing a holder to maintain an action in contract, just as a bondholder brings his action in contract.
From the foregoing, it is evident that the proposed instruments are not warrants within the contemplation ofLittlejohn. However, this does not necessarily mean that the instruments are bonds and that the issuance without an election was in violation of § 222. As stated at the beginning of our analysis, the issue before us is whether the proposed instruments are bonds, not whether the proposed instruments are warrants.
Although a warrant is assignable, the transferee cannot be a holder in due course and the transferee will be subject to all the defenses of the obligor. Also, a warrant does not have the attributes of a negotiable instrument, in that it cannot be made the foundation of an action at the suit of a transferee. On the other hand, a distinguishing feature of a bond is that it is freely transferable, and the transferee can acquire holder-in-due course status.
Bonds, within the scope of § 222, must be negotiable instruments, and the statutory provisions for negotiable instruments, § 7-3-104(1)(d), Ala. Code (1975), require that a negotiable instrument be payable to order or to bearer. In this context, the requirement that it be payable to order or to bearer contemplates that the payee will be able to directly assign the instrument to the transferee without the necessity of involving the original obligor. Although the proposed instruments in the instant case are freely transferable and assignable, this may be accomplished only on the books of the depository and only upon surrender of the warrant to the depository for cancellation. Upon the tender of the warrant, a new warrant of like tenor shall be issued to the transferee in exchange therefor. This destroys the negotiability of the instruments, and all subsequent transferees will be subject to the defenses of the City. Since the instruments in the instant case require any transfer to be accomplished through the City, the proposed instruments cannot be bonds. Therefore, the proposed instruments are not subject to the constitutional provisions of § 222.
We are not informed why the framers of the Constitution included only bonds, and not other negotiable instruments, within the provisions of § 222, but it only applies to bonds, and our function is to apply the constitutional provision as enacted and to determine whether these instruments are bonds. We cannot, by judicial interpretation, amend § 222 of the Constitution to make it applicable not only to bonds, but also to those instruments similar to bonds. Such a modification of the Constitution must take place in a different forum. The proposed instruments in the instant case cannot be bonds because they lack the attributes of negotiability; therefore, the trial court properly determined that the provisions of § 222 were not applicable to the instruments in the instant case.
The appellants also contend that the transactions violate § 94 of the Constitution of Alabama, and that an election was required prior to the execution of the lease between the Park Board and the Barons. The resolution of this issue depends entirely upon facts admitted into evidence before the trial court. Our review of these assignments of error is limited by the ore tenus rule and the fact that the appellants have failed to include in the record on appeal a transcript of the testimony taken during the hearing.
Section 94 of the Constitution of Alabama prohibits a municipality from making a loan of credit, or a grant of money or thing of value in aid of an individual or a private corporation. There are two elements to a violation of the provisions of § 94: 1) the municipality must have performed *Page 1300 
one of the proscribed acts, and 2) the recipient must be an individual or a private corporation. The appellants would have us hold as a matter of law that the transaction in the instant case is a proscribed act solely because the stadium will be operated at a deficit. This we are not prepared to do, and the record on appeal will not allow us to determine that the trial court was palpably wrong or manifestly unjust in determining that the transactions "were not arbitrary or capricious, do not constitute unjust enrichment of the Baseball Club . . . and do not impose an inequitable and unconscionable burden on the taxpayers and citizens of the City." The appellants' last contention is that trial court erred in ruling that no election was required for the approval and execution of the contracts for the lease of the stadium. As authority for their argument, the appellants rely upon Amendment No. 112 to the Constitution of Alabama, which requires voter approval before a political subdivision or public body may alienate certain public property. Again, the appellants would have us hold, as a matter of law, that a ten-year lease is equivalent to an alienation of the property. Again, this we are not prepared to do. We will not establish a time period that in and of itself equates a lease with an alienation of the property. This should be determined by the trial court on a case by case basis, and in the instant case the record on appeal will not allow us to determine that the trial court was palpably wrong or manifestly unjust in determining that there was no alienation of the property. See Winner v. Marion County Comm'n,415 So.2d 1061 (Ala. 1982).
Based on the foregoing, we are of the opinion that the judgment of the trial court is due to be affirmed.
AFFIRMED.
MADDOX, JONES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.
TORBERT, C.J., and ALMON, J., dissent.