33 So.2d 737

**BOARD OF REVENUE OF ETOWAH COUNTY et al. v. HUTCHINS.**

7 Div. 940.

Supreme Court of Alabama.

Feb. 3, 1948.

Roberts, Cunningham & Hawkins and Lusk, Swann & Burns, all of Gadsden, for appellants.

(1) May the proceeds of a bond issue voted to erect a new building for the county courthouse and jail be used for the erection of the structure elsewhere in the county seat than on the present courthouse site, where, in the call and on the election ballot was the recital that the plant was to be erected on the courthouse site?

(2) Does the governing body of the county (board of revenue) have authority, under the circumstances, to contract validly for the sale of the present courthouse site?

It is our conclusion that an affirmative answer is due both questions.

The pertinent facts are: Etowah County needs a new courthouse and jail, as duly resolved by the board of revenue of the county. In the call for the election and on the official ballot it was stated that the plant was to be constructed on the present courthouse site. The election was favorable to the proposal. It then developed and was so decided by the board of revenue that it was inexpedient and not good business to use the old site for the new structure, but that a different location in the duly constituted limits of the county seat would best serve the needs of the county and that the structure should be erected there. Pursuant to this plan a second election was held to test the sentiment of the electorate in the county on whether the proceeds of the bond issue thus authorized should be so used. A majority of the votes in the second election was also favorable to the proposal and the board proceeded with this latter plan and in connection therewith entered into a contract of sale of the old property with the right of free use thereof by the county for a period of eighteen months, presumably until the new structure should be ready for occupancy.

The bill and answer raised the two questions noticed above.

The board of revenue of the county is vested with the same authority, powers, and duties in regard to the matter here pertinent as are the courts of county commissioners under the general law. Act No. 250, S. 306, Loc.Laws 1947, p. 181, approved August 6, 1947.

It therefore had authority to direct and control the property of the county

Buford L. Copeland, of Gadsden, for appellee.

SIMPSON, Justice.

The appeal presents two questions:

as it may deem expedient according to law, Code 1940, Title 12, § 12; to erect and to keep in order and repair the buildings of the county at county expense, § 178; and to erect courthouses, jails, and hospitals and other necessary county buildings, § 185.

■ When acting within the limits fixed by law and the constitution, the authority of the board over the particular matter in question was all-encompassing. It was within its exclusive discretion to determine the necessity for a new courthouse and jail and the proper place within the county seat for its location. In making this determination the board acted in a quasi legislative capacity and in the absence of fraud, corruption, or unfair dealings that action is not subject to judicial control or revision. Matkin v. Marengo County, 137 Ala. 155, 34 So. 171; Thompson v. Chilton County, 236 Ala. 142, 181 So. 701; Board of Revenue of Covington County v. Merrill, 193 Ala. 521, 68 So. 971.

■ The constitution requires the holding of an election as a predicate to the issuance of bonds for such a purpose, Constitution 1901, Art. XII, § 222, and when the issue has been so authorized the board had authority to act in the premises. Code 1940, Title 12, §§ 92 and 93.

■■ The law does require that "the purpose for which the election is to be held, * * * and the purpose for which the bonds are to be issued" shall be stated in the notice of the election and that the use of the proceeds of the sale of the bonds shall be limited to that purpose, etc. Code 1940, Title 12, § 94; Title 37, § 261; Jefferson County v. Henry, 204 Ala. 381, 86 So. 44; Wallace v. Ball, 205 Ala. 623, 88 So. 442; Board of Revenue v. Hewitt, 206 Ala. 405, 90 So. 781; First Nat. Bank of Birmingham v. Walker County Board of Education, 243 Ala. 576, 11 So.2d 297; 15 C.J. 584, § 285; 20 C.J.S., Counties, §§ 168, 230. When, however, the notice stated that the purpose of the election and of the bond issue was for the erection of "a new building for use by said county as a courthouse and jail" this legal requirement was satisfied. We cannot regard that the superfluous mentioning in the notice of the place where the structure was to be erected is of any controlling significance. As stated, the location of the site for the plant was within the irrevisible discretion of the board of revenue and no election could dictate otherwise and no court, save for fraud, corruption, or unfair dealings, could intervene to supplant the board's action. The general control of the board over such matters, in our view, was broad enough to authorize the use of the proceeds of the issue in the erection of the structure anywhere within the county seat regardless of the lot on which situated, so long as it acted in good faith. And, on the question of good faith of the board, it is observed that no issue is raised, and, indeed, ingenuous action in that regard is evidenced by the holding of the second election to test the sentiment of the citizens of the county on the proposition.

■ A supercritical view toward compliance with the pertinent constitutional and statutory directions noted above will not be exacted. Substantial compliance is all that is required and a fair interpretation of action under the several provisions of law must be accorded so that substance be not subordinated to the shibboleth of technicality and "the end to the means." Realty Investment Co. v. City of Mobile, 181 Ala. 184, 188, 61 So. 248, 249; Paine on Elections, § 498; State v. Nicholson, 102 N.C. 465, 9 S.E. 545, 11 Am.St.Rep. 767.

The law did not require the election notice to specify the site which the Board of Revenue might decide upon as the most suitable location for the structure and even though the voters might have been permitted to express their preference in that regard, it would merely be directory and would not make the bond issue contingent on the erection of the proposed structure on that site. We perceive no more legal impediment in the way of this action of the board than had the election proceedings recited that the building was to be of brick and it should have later developed that the only expedient material to be used should be stone; or had the election been for the construction of a sanitary sewer and the election proceedings had noticed that the sewer was to be on the south side of the street, whereas it should later develop that the expedient place for constructing the sewer should be the north side of the street. Certainly it could not be successfully argued

that the board of revenue, acting in good faith, would be bound by such recitals in the election proceedings.

The case of Woodard v. Sharpe, 171 Ga. 768, 156 S.E. 614, well exemplifies the principle, where it was held that, where the responsibility for selection of a suitable site for a hospital was placed by law on the county authorities, the fact that the voters were permitted to express a preference for a site did not make the bond issue contingent on building the hospital on the site voted for. We find the following pertinent observation in the opinion of the court, to wit: "Where, under authority of the constitutional amendment * * * the constituted authorities of Ware county submitted to the voters of that county the question of a bond issue for acquiring a site and building a public hospital, and at the election the vote was affirmative for the bond issue, the fact that at the same election the county authorities and their advisory board voluntarily, and without authority or direction of law, submitted to the voters at the same election, by separate ballots cast in separate boxes, the privilege to express a choice of one from four designated sites for the hospital, did not make the bond issue contingent upon the selection of the site thus voted for, where it afterward appeared to the county authorities and the advisory board that the site so chosen by the voters was unsuitable. * * The responsibility for selection of a suitable site was placed by the law on the county authorities and the advisory board; and the exercise of their discretion in this regard should not be controlled by the courts, no abuse of discretion appearing." 156 S.E. page 616.

■ While the question concededly is a close one and the learned trial judge entertained a contrary view, we think the foregoing conclusion squares with well-reasoned authorities and the intent and purpose of the constitutional and statutory provisions hereinabove adverted to. We are therefore persuaded that the decree of the trial court in this regard should be revised.

On the second question presented for decision we are in accord with the decree that the board of revenue was within its authority to enter into a binding contract for the sale of the present courthouse site, no bad faith attending the transaction. The contract to sell the old property was a part of the plan of obtaining a new courthouse and jail and reserved to the county the free use of the old facility for a period of eighteen months, obviously until the new one should be available. This likewise was a matter consecrated to the discretion of the managing board of the county and unless it were shown that the discretion has been arbitrarily exercised and bad faith entered into the action it cannot be challenged.

■ While a municipality has no implied power to alien or to dispose of property dedicated to or held in trust for the public use, City of Bessemer v. Huey, 247 Ala. 12 (3), 22 So.2d 325, ordinarily its property abandoned from public use or not devoted thereto may be disposed of by the managing authorities when acting in good faith and without fraud. Jackson v. Ball, 211 Ala. 273, 100 So. 327; Corning v. Patton, 236 Ala. 354, 182 So. 39; 133 A.L.R., Note, p. 1245. See also 14 Am.Jur. 207; 15 C.J. 537; 20 C.J.S., Counties, § 172; 3 Dillon, Mun.Corp., 5th Ed., §§ 1102–1104.

■ The board of revenue of the county was vested with the control of the county property and "may, by an order to be entered on its minutes, direct the disposal of any real property, which can be lawfully disposed of." Code 1940, Title 12, § 177. Implicit in this authority must be the right to contract for the sale of the courthouse property as a part of the plan for the establishment of the new facility and the consequent abandonment of the old.

■ We think this is a proper application of the statute to the case in hand. While as a general proposition of law, county property immediately in the public use may not be disposed of by the governing authorities of a municipality, still in the management and control thereof they "exercise a discretion that cannot be exercised for them" and judicial revision of such action is permitted only when the action is attended with bad faith or fraud. Board of Revenue of Covington County v. Merrill, 193 Ala. 521, 529, 68 So. 971, 974, and cases cited.

So, in the case before us, we think a fair appraisal of the power committed by the statute to the court of commissioners or board of revenue of a county, § 177, supra, to dispose of county property would comprehend authority to carry out the plan devised in the instant case. It would be a legal casuistry to extract from the statute an interpretation that would require the postponement to a probably unpropitious time the execution of a contract for the disposal of the old property when complete plans had been put under way for the procurement of a new facility and the abandonment of the old one.

In consequence of the contrary opinion entertained by the trial court on the first question posed, the decree to that extent must be revised. Otherwise it stands affirmed.

Modified and affirmed.

All the Justices concur.