ALMON, Justice.
The Jefferson County Commission appropriated money for, and began construction of, a new building to provide facilities for the Jefferson County Sheriffs Department. Before construction was complete, the Commission cancelled the plans to use the building for the sheriff’s department and passed a resolution instructing its budget office and the architect to present an alternate plan for use of the building. Mel Bailey, the sheriff of Jefferson County, brought this action against the county commissioners and the county, alleging in six counts various theories under which he asserted that the commissioners should be required to provide space for his department in the new building or in some other suitable facility.
The trial court entered summary judgment for the commissioners on all but one count of the complaint. The court submitted that one count to an advisory jury, which found that the Commission was in violation of Ala.Code 1975, § 36-22-18, by failing to provide the sheriff such quarters as were reasonably necessary for the proper and efficient functioning of his department. The trial court entered a judgment, made final pursuant to Rule 54(b), Ala.R. Civ.P., accepting the advisory jury’s findings and ordering the commissioners to submit a plan whereby they proposed to come into compliance with § 36-22-18. The commissioners appealed from that judgment and from the denial of their post-trial motion. The sheriff brought a cross-appeal from a summary judgment against him on the three counts of his complaint alleging misapplication of public funds, breach of contract, and estoppel.
A large number of the sheriff’s deputies and employees are based at a facility in Fairfield, a Jefferson County community located seven miles from the Birmingham courthouse and within the Bessemer division of the Jefferson County Circuit Court. The Fairfield operations include the patrol, criminal, and technical divisions serving Birmingham. On September 10, 1985, the Commission, as then constituted, passed a resolution to provide space for the sheriff’s Fairfield operations in the Criminal Justice Center, located at Eighth Avenue North and 21st Street in Birmingham. Sheriff Bailey alleges that in late 1985,
“at the suggestion of defendant Orange, Jefferson County and the Sheriff’s Department decided that, rather than house the Sheriff’s Fairfield operations within the Criminal Justice Center itself, a separate building, located at the northeast corner of 22nd Street and 8th Avenue North, be constructed to house such Fairfield operations in their entirety.”
The sheriff alleges that that decision led to the inclusion of money for a sheriff's building in the December 1985 warrant resolution, discussed below.
Sheriff Bailey further alleges:
“Notwithstanding the foregoing, on March 23, 1987, without any prior opportunity for discussion or input, defendant Orange, acting on behalf of all defendants, notified the Sheriff by letter of the County Commission’s decision to immediately stop further construction of the facility located at 8th Avenue North and 22nd Street for the Sheriff, and to discontinue plans to relocate the Sheriff’s Fairfield operations to such facility. This decision was formally ratified by the Commissioners at their regularly scheduled meeting on March 24, 1987.”
On March 24, 1987, the Commission, as constituted after elections held in 1986, passed a resolution rescinding the September 1985 resolution and directing the county budget management office “to confer with Giattina, Fisher & Company Architects, Inc., architect for the County building under construction at 22nd Street and Eighth Avenue North, and develop a plan of utilization for said building for submission to the Commission.”
We first address the issue presented in the cross-appeal regarding the summary judgment on the sheriff’s allegation of misapplication of public funds. On December 17, 1985, the County Commission passed a resolution authorizing the issuance of warrants, the 1985 Series B Warrants. Both the resolution and the prospectus published in connection with the issuance of the war *427 rants stated that the proceeds from the sale of the warrants would be used to pay accrued interest on outstanding warrants, to provide money for refinancing the county’s outstanding warrants, to pay for constructing and renovating public buildings, and to pay costs of issuing the bonds.
The prospectus included the following as its only specific information regarding the “construction and renovation of public buildings” category, to which it allocated $9,194,793:
“The County’s recently determined ability to finance [a sewer construction program] with sewer revenues coincides with an immediate need to provide certain new public facilities, including a new family court and juvenile detention center, a satellite administrative center to serve the eastern part of the County, and new facilities for the Sheriff's Department in the main courthouse complex.”
The warrant resolution, to which the prospectus made reference for the exact terms of the warrants, stated that “The implementation of the proposed plan of refinancing will enable the County to achieve the following objectives:” (i) — (iv) regarding the refinancing of existing debt, “and (v) the borrowing of not less that $9,500,000 to finance the costs of constructing and renovating buildings and other facilities needed by the County (including the payment of a proportionate share of the issuance expenses applicable to that portion of the Warrants to be issued for such purposes).” The resolution gave detailed provisions regarding the refinancing, but only the following regarding the new construction and renovation:
“The Commission has determined that the County needs to commence work during the current fiscal year on various construction and renovation projects (herein called the ‘Projects’) which are anticipated to have a total cost that exceeds by at least $13,700,000 the capital funds now available therefor. These projects and the estimated costs thereof in excess of other available funds are as follows:
“New jail, office, and law library in Bessemer $ 2,900,000
“Satellite office and administrative facility in the Centerpoint area of the County 3,500,000
“New juvenile court and detention facilities 3,000,000
“New office facilities for the Sheriff’s Department 2,500,000
“Completion of new communication system 1,000,000
“Remodeling of the main courthouse to accommodate change in organization of County’s government 800,000
“Total $13,700,000”
These warrants were issued under the authority of Ala.Code 1975, §§ 11-28-1 through -7, added to the Code by Act No. 83-921, 1983 Ala.Acts, 4th Extraordinary Session. Section 11-28-2 reads, in part:
“In addition to all other warrants which any county shall have the power to issue pursuant to laws other than this chapter, such county shall have the power from time to time to sell and issue warrants of such county for the purpose of paying costs of public facilities.... The proceeds derived from the sale of any such warrants shall be used solely for the purpose for which they are authorized to be issued. ”
(Emphasis added.)
Courts have uniformly held that bond proceeds must be spent for the purposes for which the bonds are issued, and that any other use of such proceeds constitutes a misapplication of public funds. Wood v. City of Birmingham, 276 Ala. 544, 165 So.2d 95 (1964); Court of County Revenues for Lawrence County v. Richardson, 252 Ala. 403, 41 So.2d 749 (1949); Town of Camden v. Fairbanks, Morse & Co., 204 Ala. 112, 86 So. 8 (1920); Southern Railway v. Jackson County, 189 Ala. 436, 66 So. 570 (1914). Of course, bonds are different in material respects from warrants. O’Grady v. City of Hoover, 519 *428 So.2d 1292 (Ala.1987). However, because § 11-28-2 requires that these warrants be spent for the purpose for which they were issued, the rationale of the above-cited bond cases, that any other use of those proceeds would be a misapplication of public funds, is pertinent.
Sheriff Bailey argues that the March 24, 1987, decision to change the purpose of the building that had been designed and partially constructed specifically for use by the sheriffs department constituted a misapplication of public funds. The commissioners respond with two arguments of colorable merit: 1) that the purpose stated in the warrant resolution and the prospectus was simply “the construction and renovation of public buildings,” as to the use of which the commission has virtually unfettered discretion, and 2) the warrant resolution listed projects costing more than $13,-000,000, but allocated only $9,500,000 to the six construction and renovation projects listed.
The “generic public buildings” argument fails because of the listing of specific projects. Having itemized six identifiable projects in the warrant resolution, the commission was bound to use the $9,500,000 “solely for the purpose” of those six projects. The prospectus provides that “The Warrant Resolution will constitute a contract with the holders of the Warrants.” [1] Thus, the county was both statutorily and contractually bound to use the warrant proceeds allocated to construction and renovation for nothing other than the six projects listed under that category.
The second argument, that the county did not have to build a sheriffs building because the six projects would cost more than was allocated, might succeed if the county had never commenced construction of a sheriffs building. The record indicates, however, that the building was designed in detail for the purposes to which the sheriffs department would put it. For example, the floors were raised so that cables for a sophisticated communication system tailored to the law enforcement functions of the sheriffs department could be laid under them; a consultant was hired to design that system; and the county purchased the equipment for the system. If, for example, the county had begun construction of a jail, surely it would be a misapplication of public funds to halt in mid-construction and request a plan for retrofitting the building to serve as an office building or a community center. The expense of designing, laying a specialized foundation for, and building some of the specialized features of, such a building would be wasted if the county abruptly changed its plans.
This is not to say that the county could never change the use of a building that had been built for a particular purpose. It is only to say that, for purposes of ruling on a summary judgment motion, there was evidence that created a fact question as to whether the commissioners’ preparations to change the use of the sheriffs building constituted a misapplication of public funds. This possibility is especially strong in light of the fact that the warrants’ construction and renovation money could be used only for the purposes listed in the warrant resolution. Thus, the summary judgment for the commissioners on the misapplication-of-public-funds count of the complaint is due to be reversed and the cause remanded for further proceedings on that issue. Indeed, depending on the evidence as to how the other warrant construction money has been spent (e.g., whether the other five projects have been completed and whether the remainder of the $2,500,000 allocated to the sheriff’s building is still available), summary judgment for the sheriff might be appropriate.
The trial court did not err in entering summary judgment on the sheriff’s contract and estoppel counts, however. Both of those counts allege actions and statements by a former member of the county commission and actions taken by the sheriff in reliance thereon which, it is alleged, estop the present commission from changing commitments made by the former com *429 mission or create a contract between the commission and the sheriffs department.
The trial court entered summary judgment on the contract count, concluding that, while the elements of a contract were present, “the contract is invalid because it attempts to limit the discretionary functions of subsequent County Commissioners.” The alleged contract was one whereby a commissioner allegedly promised to move the Fairfield operations to the Criminal Justice Center if the sheriff would cause the legislature to table a pending bill that would have ordered the commission to do just that. These allegations were also the basis for the estoppel claim. Without expressing any opinion on the trial court’s conclusion that the elements of a contract were present, we hold that the court did not err in concluding that any such oral contract was an invalid attempt to limit the commission’s future exercise" of its legislative power. City of Leeds v. Town of Moody, 294 Ala. 496, 319 So.2d 242 (1975); City of Birmingham v. Holt, 239 Ala. 248, 194 So. 538 (1940); Willett & Willett v. Calhoun County, 217 Ala. 687, 117 So. 311 (1928).
The trial court also correctly entered summary judgment for the commissioners on the estoppel count, because the allegations and evidence presented would not support a judgment for the sheriff based on an estoppel theory. City of Leeds v. Town of Moody, 294 Ala. 496, 319 So.2d 242 (1975); cf. Ex parte Four Seasons, Ltd., 450 So.2d 110 (Ala.1984); Alford v. City of Gadsden, 349 So.2d 1132 (Ala.1977); Water Works & Sanitary Sewer Bd. of the City of Montgomery v. Campbell, 267 Ala. 561, 103 So.2d 165 (1958).
As to the appeal, the pertinent provision is Ala.Code 1975, § 36-22-18:
“The county commission shall also furnish the sheriff with the necessary quarters, books, stationery, office equipment, supplies, postage and other conveniences and equipment, including automobiles and necessary repairs, maintenance and all expenses incidental thereto, as are reasonably needed for the proper and efficient conduct of the affairs of the sheriffs office.”
(Emphasis added.)
Having reviewed the record, we conclude that there was sufficient evidence to sustain the verdict and judgment holding that the commission’s failure to provide facilities at the Birmingham courthouse constitutes a violation of this statute. “The sheriff must keep his office at the courthouse.” Ala.Code 1975, § 36-22-18. Sheriff Bailey’s office is in the Birmingham courthouse, and he has an assistant sheriff, whose office is in the Bessemer courthouse. The evidence supports a finding that the original move to Fairfield was intended as a temporary measure to relieve the Birmingham division from overcrowding at the Birmingham courthouse and to accommodate the Bessemer division during construction of a courthouse annex in Bessemer, and, further, a finding that the continuing operation of the sheriff’s Birmingham criminal, patrol, and technical divisions from Fairfield is so inefficient as to justify a conclusion that the commission was violating § 36-22-18 in refusing to move those divisions back to Birmingham.
We emphasize that this holding is narrowly limited to an affirmance of this judgment under these facts and under § 36-22-18. County commissions have wide discretion in managing the use of county buildings, their decisions in that regard being essentially legislative in nature. See Ala.Code 1975, § 11-3-11; White v. Hewlett, 143 Ala. 374, 42 So. 78 (1904); Matkin v. Marengo County, 137 Ala. 155, 34 So. 171 (1902). The judgment from which the commissioners appeal does not purport to tell the commissioners how to allocate space among the various public buildings under their control; rather, it concludes that the evidence supports a finding that the commission is in violation of § 36-22-18 and expressly leaves room for the commissioners to exercise their discretion in coming into compliance with that law.
Of course, the judgment ordering a plan for compliance with § 36-22-18 may become moot if further proceedings on the *430 claim alleging misapplication of public funds result in a judgment holding that warrant proceeds have been spent for the purpose stated in the warrant resolution of building “New office facilities for the Sheriff’s Department” and that the proposed mid-construction conversion of that building would constitute a use of those proceeds for some other purpose.
For the reasons stated above, the judgment finding a violation of § 36-22-18 is affirmed; as to the sheriff’s cross-appeal, the summary judgments on the estoppel and contract counts are affirmed, the summary judgment on the count alleging misapplication of public funds is reversed, and the cause is remanded.
87-361, AFFIRMED.
87-362, AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HORNSBY, C.J.,* and MADDOX, HOUSTON and KENNEDY,* JJ., concur.
STEAGALL, J.,* concurs in the result.

. We express no opinion on whether the asserted contractual nature of the instruments affects their status as "warrants.” See O’Grady v. City of Hoover, 519 So.2d 1292 (Ala.1987).