James C. Padgett, the Alabama Historical Commission, the Alabama Preservation Alliance, and the State of Alabama (collectively "the appellants") appeal the Conecuh Circuit Court's judgment refusing to enjoin the Conecuh County Commission and others[1] (collectively "the County Commission") from using funds from revenue warrants issued by Conecuh County to demolish the existing Conecuh County courthouse and to construct a new courthouse in its place. The County Commission cross-appeals the court's judgment declaring that proceeds from a county lodging tax and a court fee may not be used for the demolition of the existing courthouse and the construction of a new courthouse and enjoining the County Commission from using those proceeds for that purpose. We affirm the trial court's judgment in part, reverse it in part, and remand.
 I. Facts
The focus of this case is the Conecuh County courthouse, designed around 1900 by architect Frank Lockwood, a prominent Montgomery architect who designed the wings of the Alabama capitol as well as several other courthouses in Alabama.[2]
The courthouse has fallen into a state of extreme disrepair, and it is the manner in which the County Commission chose to remedy that situation that is at issue here.[3]
The funds for renovating the existing courthouse are derived from three sources, each of which is discussed below.
 A. The court fee
In January 1999, Amendment No. 634 to the Alabama Constitution of 1901 was proclaimed ratified. That amendment provided for a fee ("the court fee") to be collected on each case filed in the courts in Conecuh County; the court fee was to be paid into the general fund of Conecuh County. Amendment No. 634 provides:
 "In addition to any court costs or fees now or hereafter authorized, and notwithstanding any other provisions of the Constitution, including without limitation Sections 96, 104, and 105, there shall be an additional forty dollar ($40) fee assessed and taxed as costs on each civil and criminal case, excluding small claims, filed in circuit court, district court, or any municipal court in Conecuh County, as well as a fee not to exceed *Page 681 
five dollars ($5) for the service of all pleadings and other documents in connection with any such action or case. The fees may not be waived by any court unless all other fees, assessments, costs, fines, and charges associated with the cases are waived. The additional fees, when collected by the clerks or other collection officers of the courts, shall be paid into the General Fund of Conecuh County to be used by the county commission for the planning, designing, construction, financing, and operation of a new county jail and the planning, design, repair, renovation, financing, and operation of the existing county courthouse. When the costs of the new county jail and the renovated county courthouse have been fully paid or when the debt service on any indebtedness incurred by the county commission to finance or refinance the costs have been retired, whichever occurs later, the additional fees authorized by this amendment shall continue to be collected in all cases and shall be used to pay costs of the operation, upkeep, and maintenance of a new county jail and the renovated county courthouse.
This amendment shall be self-executing and shall require no enabling legislation."
(Emphasis added.)
 B. The lodging tax
In 1998, the Alabama Legislature enacted Act No. 98-657, Ala. Acts 1998, which provided for the levy in Conecuh County of a privilege or license tax on the business of renting rooms, accommodations, or lodgings in Conecuh County ("the lodging tax"). Section 12 of that act provides:
 "The custodian of the general funds of the County shall deposit the revenue derived from the tax levied herein in a special account separate and apart from other funds of the county and such funds shall be used exclusively for the purposes of (1) paying costs of constructing and equipping a new County jail in the County and of renovating and rehabilitating the historic Conecuh County Courthouse, including without limitation the financing or refinancing of such costs, and (2) once such costs shall have been paid and any debt issued or incurred to pay such costs shall have been retired, paying costs of operation, upkeep and maintenance of such renovated County Courthouse."
(Emphasis added.)
 C. The Series 2002 Warrants 1. Official statement
On or about March 14, 2002, the Conecuh County Public Building Authority ("the Building Authority"), a public corporation organized by the Conecuh County Commission, issued an official statement (essentially, a prospectus) in connection with a public offering of a series of revenue warrants in the amount of $8,960,000 ("the Series 2002 Warrants"), supported, in part, by a pledge of the proceeds from the court fee and the lodging tax. The warrants were issued not only to address the deteriorating county courthouse, but also to "refund and retire" revenue warrants previously issued to construct a new county jail as mandated by a federal court order ("the Series 2000 Warrants"). The first two paragraphs of the official statement summarized much of the transaction:
 "This Official Statement is furnished by The Conecuh County Public Building Authority, a public corporation under the laws of the State of Alabama (the `Building Authority'), in order to provide information to prospective purchasers of its $8,960,000 in principal amount of Revenue Warrants (Conecuh County Jail Courthouse Projects), Series 2002, dated March 1, 2002 (the `Series *Page 682 
2002 Warrants'). The Series 2002 Warrants will be issued under a First Supplemental Indenture dated as of March 1, 2002 (the `First Supplemental Indenture') which will amend and supplement that certain Mortgage and Trust Indenture dated as of May 1, 2000 (the `Original Indenture'), between the Building Authority and Regions Bank, Montgomery, Alabama (said bank, together with its successors in trust, being herein called the `Trustee'). The Building Authority has heretofore issued under the Original Indenture (the Original Indenture and the First Supplemental Indenture being herein together called the `Indenture') its Revenue Warrants (Conecuh County Jail Project) Series 2000, dated May 1, 2000 (the `Series 2000 Warrants'), originally issued in the aggregate principal amount of $3,395,000 and now outstanding in the aggregate principal amount of $3,335,000, in order to acquire, construct and equip a new county jail facility (the `New County Jail') in and for Conecuh County, Alabama (herein called the `County'). The Series 2002 Warrants will be issued in order (i) to finance the costs of renovating, repairing and improving the courthouse building in the County (the `County Courthouse') and (ii) to refund and retire the Series 2000 Warrants and thereby to restructure the funded indebtedness of the County.
 "Contemporaneously with and as a condition to the issuance of the Series 2002 Warrants, the Building Authority and the County will enter into a First Supplemental Lease Agreement dated as of March 1, 2002 (the `First Supplemental Lease'), which will amend and supplement that certain Lease Agreement dated as of May 1, 2000 (the `Original Lease') between the Building Authority and the County under which the Building Authority has leased the New County Jail to the County (the Original Lease and the First Supplemental Lease being herein together called the `Lease'). Under the First Supplemental Lease, the Building Authority will agree to acquire and also to renovate, repair and improve the County Courthouse and to lease it to the County for a term not longer than the current fiscal year of the County ending on September 30, 2002; provided, however, that the Lease shall contain a grant to the County of successive options to renew the term of the Lease annually until the Series 2002 Warrants are paid. See `Duration of Term' under `THE LEASE.' See also `SPECIAL COVENANTS OF THE COUNTY.'"
(Emphasis added.)
 2. First supplemental indenture
The Building Authority and Regions Bank entered into the first supplemental indenture, pursuant to which the Building Authority issued the Series 2002 Warrants as described above. The first supplemental indenture, in addition to refunding and retiring the Series 2000 Warrants, authorized the demolition of the existing Conecuh County courthouse and the construction of a new county courthouse on the site of the existing courthouse. The recitals in the first supplemental indenture state:
 "The County has requested the [Building] Authority to acquire the existing county courthouse building (herein called the `Existing Courthouse Building') as well as the land (herein called the `Courthouse Site') upon which the Existing Courthouse Building is situated, to demolish the Existing Courthouse Building, to construct a new county courthouse building (herein called the `New Courthouse Building') on the Courthouse Site[,] to acquire and install various items of furniture, furnishings *Page 683 
and equipment (herein called the `New Courthouse Equipment') for use in the New Courthouse Building (the Courthouse Site, the New Courthouse Building and the New Courthouse Equipment being herein together called the `New County Courthouse'). The County has also requested the [Building] Authority to refund and retire the Series 2000 Warrants to enable the County to realize a reduction in its annual payments under the Original Lease. The [Building] Authority has agreed to do so on behalf of the County."
Section 3.1 of the first supplemental indenture reads as follows:
 "Pursuant to the provisions of the Act and for the purposes of (a) providing for payment of the costs of demolishing the Existing Courthouse Building, of constructing the New Courthouse Building and acquiring and installing the New Courthouse Equipment for use in connection with the New County Courthouse, and (b) refunding the Series 2000 Warrants, there are hereby authorized to be issued under the Indenture an issue or series of Warrants designated Revenue Warrants (Conecuh County Jail Courthouse Projects), Series 2002, limited in aggregate principal amount to $8,960,000."
(Emphasis added.)
 3. First supplemental lease agreement
In conjunction with the issuance of the Series 2002 Warrants, the Building Authority also entered into a first supplemental lease agreement with Conecuh County; the first supplemental lease agreement amended the original lease agreement executed in conjunction with the issuance of the Series 2000 Warrants. Under the first supplemental lease agreement, Conecuh County agreed to convey the existing courthouse to the Building Authority. Section 4.1 of the first supplemental lease agreement specifically provided that the Building Authority and Conecuh County would
 "undertake and complete, or will cause to be undertaken and completed[,] the demolition of the Existing Courthouse Building, the construction of the New Courthouse Building and the acquisition and installation, on or about the Courthouse Site or elsewhere in the County, of the New Courthouse Equipment, such demolition, construction, acquisition and installation to be made in accordance with written orders, and directions from the County."
(Emphasis added.)
Subsequent to the issuance of the Series 2002 Warrants, the Conecuh County Commission initiated plans for the demolition of the existing county courthouse and the construction of a new county courthouse on the site of the existing courthouse. In December 2002, the Conecuh County Commission solicited bids for the demolition of the existing courthouse and the construction of a new courthouse; those bids were to be submitted by January 9, 2003. The Conecuh County Commission postponed awarding a contract for the demolition and construction after this action was filed.
The appellants filed this action seeking a declaratory ruling (1) that the proceeds from the court fee and the lodging tax were dedicated by law for use in renovating the existing county courthouse and the maintenance of the courthouse after it was renovated, and that those proceeds could not be used to demolish the existing county courthouse and construct a new courthouse on the same site, and (2) that the proceeds of the Series 2002 Warrants could not be used to demolish the existing courthouse and to construct a new courthouse. In addition, the appellants sought injunctive relief (1) prohibiting the Conecuh *Page 684 
County Commission from using the proceeds from the court fee and the lodging tax for any purpose other than to finance the construction of the new jail and the renovation of the existing county courthouse; (2) forcing the County Commission to renovate the existing county courthouse, and (3) prohibiting the County Commission from using the proceeds from the sale of the Series 2002 Warrants for any purpose other than to finance the construction of the new jail and the renovation of the existing county courthouse.
The trial court issued an order, on the joint stipulation of the parties, temporarily restraining the awarding of any contract for the demolition of the existing county courthouse that was to be funded by the court fee, the lodging tax, or the Series 2002 Warrants, and from spending any proceeds generated from those sources for such demolition. The trial court set a hearing on a preliminary injunction for January 14, 2003. This hearing, however, was restricted to the appellants' requests for injunctive relief.
Following that hearing, the trial court entered an order granting some of the appellants' requests for injunctive relief and denying others. Specifically, the order enjoined the County Commission:
 "1. From using any public funds generated by the Amendment [Amendment No. 634] or the Act [Act No. 98-657] for any purpose other than to pay for the costs of constructing, equipping, financing, refinancing, and operation of the new Conecuh County Jail and to pay the costs of planning, designing, renovating, repairing, financing, rehabilitating, and operating the existing Conecuh County Courthouse.
 "2. From awarding any contract for the demolition of the existing Conecuh County Courthouse, the payment for which is, partially or totally, from funds generated by the Amendment or the Act;
 "3. From using any public funds generated by the Amendment or the Act for the purpose of paying, in whole or in part, for the demolition of the existing Conecuh County Courthouse; and,
 "4. From using any public funds generated by the Amendment or the Act for the purpose of constructing a new Conecuh County Courthouse."
However, the trial court denied the appellants' other requests for injunctive relief.
The trial court subsequently made this order final pursuant to Rule 54(b), Ala. R. Civ. P. The appellants appeal the trial court's denial of their request for injunctive relief prohibiting the County Commission from using the proceeds from the sale of the Series 2002 Warrants for any purpose other than to finance the construction of the new jail and the renovation of the existing county courthouse and forcing the County Commission to renovate the existing county courthouse; the County Commission cross-appeals, raising various issues discussed below.[4]
 II. Standard of Review
Where the trial court's findings are based on ore tenus evidence, we apply the following standard in reviewing its ruling:
 "Under the `ore tenus rule,' a presumption of correctness accompanies the trial court's judgment when it has made findings of fact based on disputed oral testimony without a jury, and its judgment will not be reversed unless it is shown to be plainly and palpably wrong, considering *Page 685 
all of the evidence and all inferences that can be logically drawn from the evidence. King v. Travelers Ins. Co., 513 So.2d 1023 (Ala. 1987); McCrary v. Butler, 540 So.2d 736 (Ala. 1989)."
Alabama Highway Dep't v. Stuckey's/DQ of Grand Bay, Inc.,613 So.2d 333, 335 (Ala. 1993). However, as to issues of law, or "where there are no disputed facts and where the judgment is based entirely upon documentary evidence, no such presumption of correctness applies; our review is de novo." Alfa Mut. Ins. Co.v. Small, 829 So.2d 743, 745 (Ala. 2002). Because this appeal concerns primarily issues of law, our review is de novo.
 III. Analysis
The parties raise several issues: (1) whether the trial court erred in interpreting the language of Amendment No. 634 and Act No. 98-657 as forbidding the use of the proceeds from the court fee and the lodging tax to pay for demolition of the existing, and construction of a new, county courthouse; (2) whether the trial court erred in interpreting that same language as not allowing those proceeds to be used for only one of the two purposes for the funding, i.e., a jail or the renovation of the courthouse; and (3) whether the trial court erred in refusing to enjoin the County Commission from using the proceeds from the Series 2002 Warrants to demolish the existing county courthouse and to construct a new county courthouse.
 A. Use of the proceeds from the court fee and the lodging tax
The relevant substance of the trial court's order is as follows:
 "The following constitutes the Court's interpretation of the significant language of the Amendment [Amendment No. 634]:
 "As set forth in the third sentence, there are two (2) projects for which the fees are to be used: the planning, designing, construction, financing, and operation of a new county jail; the planning, design, repair, renovation, financing, and operation of the existing county courthouse; these compound objects of the preposition `for' are joined by the coordinating conjunction `and'; `construction' precedes `a new county jail,' whereas `construction' does not precede `the existing county courthouse,' `renovation' precedes `the existing county courthouse,' but does not precede `a new county jail';
 "the words `county jail' are preceded by an indefinite article (`a') and an adjective (`new');
 "whereas the word `courthouse' is preceded by a definite article (`the') and a descriptive adjective (`existing').
 "There is nothing in the wording of either sentence to suggest the building of a new courthouse. The language clearly states that the fees shall be used to construct a new county jail and to renovate the existing county courthouse. `And' is a coordinating conjunction connecting these two (2) equal projects, neither of which has priority. Therefore, the County Commission does not have discretion to use all of the fees for one (1) of the projects to the exclusion of the other project.
 "The following constitutes the Court's interpretation of the significant language of Section 12 of the Act [Act No. 98-657]:
 "This Section contains one long prepositional phrase with two equal purposes joined by a coordinating conjunction, i.e., `and' (sometimes referred to by the Alabama Supreme Court as a conjunctive conjunction); `. . . such funds shall be used exclusively *Page 686 
for the purposes of . . .' describes a subject (`funds'), a verb (`shall be used'), a preposition (`for') and objects of the proposition (two (2) purposes); the mandatory word `shall' stresses the use of the `funds,' and the adverb `exclusively' emphasizes the specificity of the use of the funds;
 "[T]his long paragraph states two (2) purposes for the funds from the tax: paying for construction and equipping a new county jail; paying for renovating and rehabilitating the courthouse in Conecuh County, and then paying for the operation, upkeep and maintenance of the courthouse; there is no language which indicates any priority with regard to the payment of either of the two (2) purposes because they are two (2) equal purposes;
 "the purposes are clear as to their meaning, and are not joined by the disjunctive conjunction `or';
 "the words `county jail' are preceded by an indefinite article (`a') and an adjective (`new'); whereas the words `Conecuh County Courthouse' are preceded by a definite article (`the') and a descriptive adjective (`historic');
 "the adjective `historic' is not defined anywhere in the statute, and nowhere in the record is there any evidence or testimony that there was any legislative history or finding regarding the use of this descriptive adjective, so the Court construes the word merely as its generic meaning, especially since it is not included in the language of the Amendment.
 "Thus, the Court declines to interpret the word `and,' as used in the Amendment and in the Act, to have a disjunctive meaning. This finding by the Court is in contrast to the testified interpretation of said word by [the County Commission's] witness. As bond counsel stated: `It was my interpretation of those statutes that the revenues that were to be collected from the taxes or the fees specify they could be used for the construction of a new jail or
for the renovation of the existing courthouse. It was not my interpretation that they had to be used for both.' (wit.'s test. p. 159-60) (emphasis added); and `. . . that those warrants would have to be for — either for the construction of a new jail or for the renovation of the existing courthouse.' (wit.'s test. p. 159) (emphasis added).
". . . .
 ". . . It is the opinion of this Court that attributing to the word `and' its literal meaning in the Amendment and in the Act does not render either the Amendment or the Act inoperable, nor does such use of the word `and' cause the meaning of either the Amendment or the Act to become questionable.
 "The language set forth in the Official Statement is that of the draftsman (bond counsel). Included in the Official Statement is the following language, `. . . (i) to finance the costs of renovating, repairing and improving the courthouse building in the County (the "County Courthouse.") . . .'. With respect to said language, bond counsel testified `and I wrote it that way deliberately.' (wit.'s test. p. 163). However, this phrase contains a word that appears nowhere in either the Amendment or in the Act; viz. `improving.' The inclusion of the unauthorized word improving by the draftsman is significant, since, repeatedly, bond counsel justified his contention that construction of a new courthouse was authorized by his interpretation of the word `improving.' But, the legislature did not include the word `improving' in the statute, and the electorate did not *Page 687 
vote to adopt a constitutional amendment that included the word, `improving.' Consequently, the Court determines that there is no word or language in either the Amendment or the Act which authorizes the expenditure of fees or proceeds generated by the Amendment or the Act to be used for purposes of planning, designing, financing, and/or constructing a new county courthouse in Conecuh County, Alabama.
 "The Court is aware of the contents of § 11-14-10, Code of Alabama 1975, as amended, wherein it is mandated, inter alia, `The county commission shall erect courthouses, . . . such courthouses to be adequate and commodious for the business of such (circuit) court and county at such place. . . .'
 "The Court, having been in and around the `existing county courthouse' during the trial of this cause, finds that the plans and specifications prepared by the architect at the direction(s) of the County Commission and/or the Building Authority would, if implemented, provide a most adequate and commodious courthouse for the use of the public and the public officials. The Court finds, particularly, that the construction of a new courthouse pursuant to such plans and specifications would provide for adequate safety of individuals required to conduct business or be in attendance at proceedings in the county courthouse and for enhanced security for official documents and records which provide evidence of proceedings of courts of record, matters relating to title of real property, historical materials not otherwise in existence elsewhere which pertain to individuals, families, the County, etc. In fact, the Court commends the County Commission for attempting to provide the citizens of Conecuh County, as well as citizens of other counties and states, with a safe, modern, and commodious (spacious) new courthouse. However, regardless of how commendable the actions of the County Commission may be in its attempt to construct a new county courthouse in Conecuh County, such cannot be accomplished by the misapplication of public funds. The County Commissioners, as well as the undersigned, are public officials. As such, each is oath-bound to uphold the laws and Constitution of the State of Alabama. As presently phrased, the language of said Amendment No. 634 and of said Act No. 98-657 does not mandate, or permit, proceeds or funds generated by either the Amendment or the Act to be used to fund the construction of a new county courthouse in Conecuh County. The two mandated equal purposes are clearly and unambiguously set forth in the language of the Constitution and the Act. Neither the Legislature nor the vote of the qualified electors has authorized the use of such funds or proceeds to be used only for a singular mandated purpose stated therein. This Court did not create this legislative/financial quagmire. Nevertheless, it is the duty of this Court to follow the law as it understands and interprets the Amendment and the Act. For this Court to construe the Amendment and the Act contrary to their clear meaning would be not only to frustrate the intent of the legislature but also to disregard the vote of the electorate of this State.
"In summary, the Court finds as follows:
 "1. That some of the language contained in the Official Statement was, at least, a misstatement, if not a misrepresentation;
 "2. That the Amendment and the Act were in effect at the time of the issuance of the Series 2000 Warrants. Bond counsel, counsel for the County, *Page 688 
members of the Commission, and members of the Building Authority had ample opportunity and responsibility to become acutely and intimately aware of the language and content of the Amendment and the Act prior to the authorization of the issuance of the Series 2002 Warrants. Yet, apparently, there have been no efforts to repeal, amend, modify, or otherwise legally alter the language of the Amendment and/or the Act;
 "3. That absent funds from other sources, the fees and proceeds generated solely by the Amendment and by the Act do not produce adequate revenues to fund either the renovating of the existing county courthouse or the construction of the new county jail;
 "4. That it would be misapplication of public funds for the fees or proceeds from the Amendment and the Act to be used for the demolition of the existing Conecuh County Courthouse;
 "5. That it would be a misapplication of public funds for the fees or proceeds from the Amendment and the Act to be used for the construction of a new county courthouse in Conecuh County; and,
 "6. That it would be a misapplication of public funds for the fees or proceeds from the Amendment and/or the Act to be used as set forth in the [First] Supplemental Indenture."
(Emphasis in original.)
We agree with the trial court that the language of Amendment No. 634 and of Act No. 98-657 forbids the use of the proceeds collected from the court fee and the lodging tax to demolish the existing county courthouse and to construct a new courthouse. We adopt its reasoning in support of that holding. As the trial court noted, there is simply no rational way to interpret the words of Amendment No. 634 and Act No. 98-657 to allow such a use; both the Amendment and the Act clearly indicate that the proceeds are to be used for the renovation of the known, existing, historic county courthouse, along with the construction of a new county jail. This is made clear beyond doubt by the comparison of the words used, in close proximity to each other, to describe the two entities being discussed: a jail and the
courthouse. See Amend. No. 634, Ala. Const. 1901 ("to be used by the county commission for the planning, designing, construction,financing, and operation of a new county jail and the planning, design, repair, renovation, financing, and operation
of the existing county courthouse"); § 12, Act No. 98-657 ("used exclusively for the purposes of . . . paying costs ofconstructing and equipping a new County jail in the County and of renovating and rehabilitating the historic Conecuh County Courthouse").
The County Commission argues that terms like "renovation" and "repair" are broad enough to encompass the construction of a new courthouse. If those words are viewed in a vacuum, such an interpretation may have merit. However, those words cannot be so viewed in the contexts in which they appear in Amendment No. 634 and Act No. 98-657. The drafters of the texts of the Amendment and the Act demonstrated that they knew the difference between the creation of something new and the renovation of something old, and they assigned those words in light of this knowledge. Amendment No. 634 and Act No. 98-657 are now law, and they are not ambiguous; therefore we may not go beyond the clear meaning of the words used therein in interpreting them. See DeKalbCounty LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275-277
(Ala. 1998).
The County Commission also contends that the trial court erred in holding that the proceeds from the court fee and the lodging tax had to be used for both *Page 689 
projects (the jail and the courthouse) simultaneously and in equal amounts; i.e., that the funds could not be solely, or at least initially, dedicated by the County Commission to fund the construction of a new county jail. The County Commission argues that the trial court erred in interpreting the word "and" as it is used in Amendment No. 634 ("to be used by the county commission for the planning, designing, construction, financing, and operation of a new county jail and the planning, design, repair, renovation, financing, and operation of the existing county courthouse"), and in Act No. 98-657 ("used exclusively for the purposes of . . . paying costs of constructing and equipping a new County jail in the County and of renovating and rehabilitating the historic Conecuh County Courthouse") to require such a result. We agree.
No specific direction is given in either Amendment No. 634 or in Act No. 98-657 as to exactly how the proceeds of the court fee and the lodging tax are to be spent; for example, there is no direction regarding the appropriate timing, amount, or percentage of disbursements of funds to each project. While the appellants' position — that the County Commission must fund the projects simultaneously and in equal amounts — is one possible interpretation, it is not the only possible interpretation. In such a situation, the issue of the disbursement of those funds becomes a political, "quasi-legislative" issue, see Board ofRevenue of Etowah County v. Hutchins, 250 Ala. 173, 176,33 So.2d 737, 738 (1948); the County Commission has full discretion to direct the disbursement of the proceeds from the court fee and the lodging tax in the manner that in its judgment seems best and most efficient. This discretion is limited only in that the County Commission cannot use those proceeds for anything other
than a new jail or the renovation of the existing county courthouse, and the County Commission must avoid "fraud, corruption, or unfair dealings." Hutchins, 250 Ala. at 176,33 So.2d at 738. To the extent that the trial court's order conflicts with this conclusion, that order is reversed.
 B. Use of the proceeds from the Series 2002 Warrants
However, the appellants contend that, given the trial court's ruling that the proceeds from the court fee and the lodging tax cannot be used to construct a new courthouse — a ruling that we now affirm — the trial court erred in not enjoining the County Commission from using the proceeds from the Series 2002 Warrants for that purpose. The appellants give two reasons for this contention. First, the issuing documents pledge the proceeds from the court fee and the lodging tax to repay the Series 2002 Warrants. Second, the language of the official statement should bind the County Commission's actions with regard to the Series 2002 Warrants, especially in light of the trial court's finding that the official statement apparently contained "misstatements" or "misrepresentations" concerning the County Commission's intentions regarding the existing county courthouse. The appellants argue that for these reasons the trial court erred in holding that the proceeds from the Series 2002 Warrants could be used for a purpose other than the demolition of the existing county courthouse and the construction of a new courthouse.
As to the appellants' first argument, while the proceeds from the court fee and the lodging tax were pledged for the repayment of the Series 2002 Warrants, it is apparently undisputed that the proceeds from those sources were not necessary to fund the Series 2002 Warrants. The Series 2002 Warrants were backed primarily by a pledge of certain ad valorem and sales taxes that made the pledge of the *Page 690 
proceeds from the court fee and the lodging tax superfluous. Although we agree with the appellants that the proceeds from the court fee and the lodging tax cannot be pledged to repay warrants issued to fund the demolition of the existing county courthouse and the construction of a new courthouse and that the court fee and the lodging tax therefore must be excised from the list of pledged funds, we cannot hold that the fact that those proceeds were initially pledged to repay warrants issued for that purpose bars the County Commission from using the proceeds of the Series 2002 Warrants to build a new courthouse.
As to their second argument — that the official statement binds the use of the proceeds of the Series 2002 Warrants — the appellants claim that, in light of our decision in Orange v.Bailey, 548 So.2d 424 (Ala. 1989), the trial court erred in not barring the use of the warrant proceeds to demolish the existing county courthouse and to construct a new one. In Orange, we held that, under Ala. Code 1975, § 11-28-2,[5] proceeds from warrants issued by the Jefferson County Commission that were, according to the Commission's resolution authorizing the issuance of the warrants, dedicated to be used for certain delineated projects, could not be used for a project not delineated in the resolution. 548 So.2d at 427-28. However, while this case is governed by a statutory provision similar to the one that governed in Orange, Ala. Code 1975, § 11-15-13 (providing that "[t]he proceeds derived from the sale of any warrants (other than refunding warrants) may be used only to pay the cost of acquiring, constructing, improving, enlarging and equipping a project or any part thereof as may be specified in theproceedings in which the warrants are authorized to be issued") (emphasis added), we do not believe that Orange compels the conclusion argued by the appellants.
In Orange, the prospectus and the warrant resolution were not in conflict, and it was clear that the resolution, and not the prospectus, contained the provisions that controlled the warrants. 548 So.2d at 427-28 (noting that the prospectus made reference to the warrant resolution "for the exact terms of the warrants," and that the warrant resolution, not the prospectus, was a binding contract with the holders of the warrants). Here, the official statement (a prospectus) and the first supplemental indenture (through which the warrants were officially issued) do appear to conflict, but the official statement makes it clear that the terms of the indenture control, just as the prospectus indicated that the terms of the warrant resolution controlled inOrange. The official statement provides, in part:
 "This Official Statement contains brief descriptions of the Building Authority, the New County Jail and the County Courthouse, as well as information respecting the use of the proceeds of the Series 2002 Warrants and summaries of certain provisions of the Series 2002 Warrants, the Lease and the Indenture. Appendix A to this Official Statement contains certain demographic information regarding the County; Appendix B contains certain financial information regarding the County (prepared from unaudited data) and compiled by the Department of Examiners of Public Accounts *Page 691 
of the State of Alabama; and Appendix C contains a copy of the proposed approving opinion of Bond Counsel respecting the Series 2002 Warrants. The summaries of the documents herein contained are not complete or definitive, and every statement made in this Official Statement concerning any provision of any document is qualified by reference to such document in its entirety. For complete details of any and all terms and conditions respecting the Series 2002 Warrants, prospective purchasers are referred to the Lease and the Indenture, copies of which may be obtained from the office of the Trustee or from the offices of The Frazer Lanier Company, Inc., in Montgomery, Alabama (the `Underwriter'), the underwriter of the Series 2002 Warrants. Terms used but not defined in this Official Statement shall have the meanings given them in the specific documents in which they are defined and used."
(Emphasis added.)
As shown above, the indenture clearly states that the Series 2002 Warrants were being issued to fund the demolition of the existing county courthouse and the construction of a new courthouse. Therefore, because the indenture controls, it appears that, unlike Orange, the use of the warrant proceeds in this case to demolish the existing county courthouse and to construct a new courthouse is proper. Accordingly, we affirm the trial court's refusal to enjoin the County Commission from using the proceeds from the Series 2002 Warrants in accordance with the purposes specified in the indenture.
 IV. Conclusion
Based on the above, we affirm the trial court's order insofar as it bars the County Commission from using the proceeds from the court fee and the lodging tax (1) to directly fund the demolition of the existing county courthouse and the construction of a new courthouse, or (2) as a pledge for the Series 2002 Warrants, if the proceeds from those warrants are used for such purposes. We reverse the trial court's order to the extent that it binds the County Commission's discretion regarding the use of the court-fee and lodging-tax proceeds to pay for the new county jail, as discussed above. We affirm the trial court's denial of the appellants' request that the County Commission be enjoined from using the proceeds of the Series 2002 Warrants in the manner stated in the indenture.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] The other defendants are County Commissioners Hugh Barrow, Jerold Dean, D.K. Bodiford, Wendell Byrd, and Leonard Millender; the Conecuh County Building Authority and its members Billy G. Mims, Sr., W.J. Reed, and Alice Ann Baldwin; and Harry Still, the Conecuh County Administrator.
[2] The courthouse is a contributing structure to the designation of downtown Evergreen as a historic district on the National Register of Historic Places and is itself eligible for listing on the National Register as a separate structure.
[3] While the County Commission elaborates on the extent of the disrepair, it is sufficient to say that there was substantial,apparently uncontradicted, evidence indicating that the courthouse had deteriorated to such a degree that it would be almost impossible, or at least financially prohibitive, to safely restore the courthouse.
[4] Our resolution of this appeal pretermits the need to address all of the issues raised by the County Commission.
[5] Ala. Code 1975, § 11-28-2, provides, in pertinent part:
 "In addition to all other warrants which any county shall have the power to issue pursuant to laws other than this chapter, such county shall have the power from time to time to sell and issue warrants of such county for the purpose of paying costs of public facilities. . . . The proceeds derived from the sale of any such warrants shall be used solely for the purpose for which they are authorized to be issued."