974 So.2d 993 (2007)
James C. PADGETT and Alabama Preservation Alliance, Inc.
v.
CONECUH COUNTY COMMISSION et al.
Conecuh County Commission
v.
James C. Padgett and Alabama Preservation Alliance, Inc.
2041078.
Court of Civil Appeals of Alabama.
December 1, 2006.
Rehearing Denied May 11, 2007.
Certiorari Denied June 15, 2007.
*995 Alton B. Parker, Jr., Samuel H. Frazier, and Gary W. Lee of Spain & Gillon, LLC, Birmingham, for appellants/cross-appellees James C. Padgett and Alabama Preservation Alliance, Inc.
Kendrick E. Webb, Bart G. Harmon, and Scott W. Gosnell of Webb & Eley, P.C., Montgomery; and Richard D.C. Nix of Nix & Nix, Evergreen, for appellees/cross-appellants.
Alabama Supreme Court 1061191.
BRYAN, Judge.
Two of the plaintiffs below, James C. Padgett and Alabama Preservation Alliance, Inc. ("APA"), appeal a judgment insofar as it: (1) denied APA an award of attorneys' fees and costs; (2) awarded Padgett less than the full amount of the attorneys' fees and costs that he sought; and (3) forfeited $25,000 deposited with the trial court clerk on behalf of Padgett and APA as security for the issuance of a temporary restraining order ("the TRO"). The Conecuh County Commission and the other defendants below[1] (collectively "the County Commission") cross-appeal the judgment insofar as it awarded Padgett attorneys' fees and costs. We affirm in part, reverse in part, and remand.
This is the second appeal arising from this case. For a detailed recitation of the factual and procedural history of the case, see the supreme court's opinion in Padgett v. Conecuh County Commission, 901 So.2d 678 (Ala.2004).
For purposes of this appeal, the material substantive and procedural facts are as follows. In January 2003, Padgett and APA, along with the Alabama Historical Commission, sued the County Commission in the Conecuh Circuit Court.[2] The plaintiffs challenged the County Commission's proposed use of funds generated by a court fee ("the court fee"), a lodging tax ("the lodging tax"), and a series of revenue warrants issued in 2002 ("the Series 2002 Warrants") to pay the cost of: (1) demolishing the existing Conecuh County courthouse ("the existing courthouse"), which the plaintiffs considered to be a historically significant building; and (2) constructing a new courthouse on the site of the existing courthouse. The plaintiffs also alleged that the language of Amendment No. 634 to the Alabama Constitution of 1901 ("the Amendment"),[3] which authorized the collection *996 of the court fee, prohibited the use of funds generated by the court fee to pay for the demolition of the existing courthouse and the construction of a new courthouse. Additionally, the plaintiffs alleged that Act No. 98-657, Ala. Acts 1998 ("the Act"), which authorized the collection of the lodging tax, prohibited the use of the funds generated by the lodging tax to pay for the demolition of the existing courthouse and the construction of a new courthouse. The plaintiffs alleged that the language of the prospectus that was issued to sell the Series 2002 Warrants precluded the use of the proceeds of the Series 2002 Warrants to pay for the demolition of the existing courthouse and the construction of a new courthouse.
A few days after this action was filed, the trial court entered the TRO enjoining the County Commission from spending funds generated by the court fee, the lodging tax, and the Series 2002 Warrants to pay for the demolition of the existing courthouse and the construction of a new courthouse. The TRO further stated:
"Pursuant to Rule 65(c), [Ala. R. Civ. P.,] the Court determines that no bond shall be required of the Alabama Historical Commission, an agency of the State of Alabama; however, as to Plaintiffs James C. Padgett and the Alabama Preservation Alliance, this order shall only be effective upon the Plaintiffs James C. Padgett and the Alabama Preservation Alliance combined giving security in the amount of Twenty Five Thousand Dollars ($25,000.00) with good and sufficient surety approved by the Circuit Clerk of this Court."
APA deposited $25,000 with the trial court clerk, and the TRO became effective. Subsequently, the trial court entered an order that granted the plaintiffs' request for an injunction enjoining the County Commission from using funds generated by the court fee and the lodging tax to pay for the demolition of the existing courthouse and the construction of a new courthouse, but it denied the plaintiffs' request for an injunction enjoining the County Commission from using the proceeds of the Series 2002 Warrants for those purposes. The trial court made that order final pursuant to Rule 54(b), Ala. R. Civ. P. The plaintiffs then appealed that order insofar as it denied their request for an injunction enjoining the County Commission from using the proceeds of the Series 2002 Warrants to pay for the demolition of the existing courthouse and the construction of a new courthouse. The County Commission cross-appealed the order insofar as it enjoined the County Commission from using funds generated by the court fee and the lodging tax to pay for the demolition of the existing courthouse and the construction of a new courthouse.
In Padgett v. Conecuh County Commission, supra, the supreme court held that the language of the Amendment and the language of the Act prohibited the County Commission from using the funds generated by the court fee and the lodging tax to pay for the demolition of the existing courthouse and the construction of a new courthouse. However, the supreme court held that the proceeds of the Series 2002 Warrants could be used to pay for the demolition of the existing courthouse and the construction of a new courthouse.
Following the supreme court's remand of the case to the trial court, Padgett and APA petitioned the trial court to award them attorneys' fees and costs totaling $199,196.35 on the ground that they had obtained relief that benefited the public. In response, the County Commission challenged the standing of APA to participate as a plaintiff in the action and argued that, because APA lacked standing, it was not entitled to an award of attorneys' fees and *997 costs. The County Commission challenged Padgett's claim for attorneys' fees and costs on a number of grounds. In addition, the County Commission sought the forfeiture of the $25,000 that had been deposited on behalf of APA and Padgett as security for the issuance of the TRO. The County Commission argued that the trial court should order a forfeiture of the security because, insofar as the TRO had been issued at the behest of APA, the TRO order was wrongful because APA lacked standing to seek the TRO. The County Commission argued that the trial court should order the forfeiture of the entire $25,000, even though it had been deposited on behalf of both APA and Padgett, because APA was the source of the entire $25,000.
First, the trial court held that, because no members of APA were resident citizens and taxpayers of Conecuh County when the action was filed, APA did not have standing to participate in the action as a plaintiff. Second, the trial court held that, because APA did not have standing, it was not entitled to any attorneys' fees or costs. Third, the trial court held that Padgett was entitled to only $21,901.29 in attorneys' fees and costs rather than the $199,196.35 he sought. Fourth, the trial court held that, because APA did not have standing, the issuance of the TRO, insofar as it had been issued at the behest of APA, was wrongful within the meaning of Rule 65, Ala. R. Civ. P. Fifth, the trial court held that, because APA had deposited the entire $25,000 as security for the TRO, the County Commission was entitled to a forfeiture of the entire $25,000, even though the $25,000 was deposited as security on behalf of both APA and Padgett.
Padgett and APA then appealed to the supreme court, and the County Commission cross-appealed. Finding that the appeal and the cross-appeal were within this court's appellate jurisdiction, the supreme court transferred the appeal and the cross-appeal to this court.
The threshold issue raised by APA's appeal is whether APA had standing.
"`"[L]ack of standing [is] a jurisdictional defect,"' State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999) (quoting Tyler House Apartments, Ltd. v. United States, 38 Fed.Cl. 1, 7 (1997)), and it `"remains open to review at all stages of the litigation."' Ex parte Fort James Operating Co., 871 So.2d [51] at 54 [ (Ala.2003) ] (quoting National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994))."
Goodyear Tire & Rubber Co. v. Moore, 900 So.2d 1239, 1240 (Ala.Civ.App.2004). "Standing . . . turns on `whether the party has been injured in fact and whether the injury is to a legally protected right.'" State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1027 (Ala.1999) (quoting Romer v. Board of County Comm'rs of the County of Pueblo, Colo., 956 P.2d 566, 581 (Colo.1998) (Kourlis, J., dissenting)).
APA argues that, as a statewide organization with an interest in the preservation of historical buildings, it had standing to sue the County Commission to prevent the demolition of the existing courthouse, even though, on the date the action was filed, none of its members were resident citizens or taxpayers of Conecuh County. In support of that argument, APA cites the holding in Committee to Save the Fox Building v. Birmingham Branch of the Federal Reserve Bank of Atlanta, 497 F.Supp. 504 (N.D.Ala.1980).
In Committee to Save the Fox Building, an unincorporated association of individuals, each of whom was a resident citizen and taxpayer of the City of Birmingham, *998 sued the owner of the Fox Building, a building located in the City of Birmingham, to prevent its demolition. The association claimed that the proposed demolition of the Fox Building would violate the National Environmental Policy Act and the National Historic Preservation Act.
However, Committee to Save the Fox Building is distinguishable from the case now before us. In Committee to Save the Fox Building, the association claimed that its members had aesthetic and environmental interests in preserving the Fox Building and premised its claims against the owner of the Fox Building on statutes that protected those interests. In the case now before us, on the other hand, APA claimed its members had an aesthetic and environmental interest in preserving the existing courthouse but premised its claims against the County Commission on laws that protected an altogether different interestthe laws on which APA premised its claims protected only the interests of citizens of Conecuh County in having County funds expended for their authorized purposes. Because none of the members of APA were citizens of Conecuh County on the date this action was filed, the laws on which APA premised its claims did not protect the interests of any of its members and, therefore, APA did not have standing to prosecute those claims. Accordingly, we affirm the holding of the trial court that APA did not have standing.
With respect to APA's and Padgett's requests for attorneys' fees and costs, the trial court explained and held:
"The following factors, among others, have been considered by the court in arriving at a resolution of this issue:
"The same law firms (Spain & Gillon and Hyde) represented both Plaintiffs, APA and Padgett. However, the court has determined that one of said Plaintiffs (APA) was not a proper party, and thus no attorneys fees can be apportioned to the law firms for their representation of APA.
"Attorneys for APA and Padgett were not the only lawyers who represented party Plaintiffs in this cause. Lawyers for APA and Padgett were assisted by the able and substantial participation of Hon. William D. Little, assistant attorney general, counsel for the State and for [the Alabama Historical Commission].
"There was no written employment contract or fee agreement between attorneys for APA and Padgett and their clients.
"Some of the fees and costs billed by Hyde and/or Spain & Gillon have been paid by APA.
"Both this court, as well as the Supreme Court (i.e., `We agree with the trial court that the language of Amendment No. 634 and of Act No. 98-657 forbids the use of the proceeds collected from the court fee and the lodging tax to demolish the existing county courthouse and to construct a new courthouse. We adopt its reasoning in support of that holding.'), determined that the efforts of the attorneys for the Plaintiffs rendered a public service or resulted in a benefit to the general public by bringing an end to an improper practice. Thus, some [amount of] attorney's fees is justified for the representation by Spain & Gillon and Hyde in their efforts on behalf of Padgett. What contributes to the difficulty in determining an amount to be awarded to these said attorneys for their efforts in achieving this public service, are the following: these attorneys represented two different Plaintiffs, one of which (APA) this court has determined did not have standing, and thus no amount of fees and costs should be awarded for their representation of *999 APA; these attorneys did represent a proper party (Padgett) and the efforts exerted and costs incurred during said representation justifies an award of some attorney's fee; however, two other Plaintiffs (the State and [the Alabama Historical Commission]) were also proper Plaintiffs, and these other Plaintiffs were represented by counsel from the attorney general's office, and obviously no award is authorized for his participation and efforts in this litigation; nevertheless, the court cannot discount his contributions in successfully enjoining Defendants from participating in an unlawful practice.
"The initial Billing Statement by Spain & Gillon addressed to APA for services rendered through December 31, 2002, evidences no mention of Padgett, but is replete with references to Mr. DeShields (APA), Dr. Warner ([the Alabama Historical Commission]) and attorney Little (the State). These services were rendered prior to Padgett being involved in this case, and thus none of this amount ($10,680.96) should be included in any award by this court for the representation of Padgett.
"Concerning the next Billing Statement by Spain & Gillon addressed to APA for services rendered through January 31, 2003, the court notes the entry dated 01-03-03, which includes, `telephone conference with Mr. Padgett and initial agreement to be a plaintiff.' Any amounts (viz. $7,570.00) included for services rendered prior to such date are due to be deducted from the Total Due of $82,390.21 ($82,390.21 less $7,570.00 = $74,820.21) for services rendered for the representation of Padgett and APA.
"The Billing Statement for services rendered by Spain & Gillon for their representation of Padgett and APA through February 28, 2003, was the sum of $2,108.03.
"The Billing Statement for services rendered by Spain & Gillon for their representation of Padgett and APA through March 31, 2003, was the sum of $9,937.17.
"The Billing Statement for services rendered by Spain & Gillon for their representation of Padgett and APA through April 30, 2003, was the sum of $1,244.23. The record reveals, though, that as of April 11, 2003, this court entered an order whereby said Defendants were, inter alia, enjoined from conduct which was considered to be unlawful by this court. In other words, as of April 11, 2003, Plaintiffs had successfully acquired court relief of enjoining and restraining Defendants from participating in such unlawful conduct. Any attorney's fees or costs billed subsequent to April 11, 2003, were unnecessary to achieve the public good, for which this court determines Plaintiffs' (APA and Padgett) attorneys jointly achieved with attorney for other Plaintiffs. The portion of said Statement for which services were rendered as of April 11, 2003, is determined to be $201.98.
"Insofar as Hyde is concerned, it appears that his fees and costs which were billed for the period ending April 11, 2003, was $10,123.75. Of said sum, $393.75 was billed for services rendered prior to Padgett becoming a Plaintiff, and, furthermore, it appears that Hyde has already been compensated in the amount of $9,192.25 in this case ($10,123.75 - $393.75 = $9,730.00 - $9,192.25 = $537.75). For the period ending April 11, 2003, it thus appears Hyde has billed for fees and costs in the sum of $681.95 ($537.75 fees + $144.20 costs = $681.95), for his representation of APA and Padgett for which he has not yet been compensated.

*1000 "Subsequent to April 11, 2003, the efforts by attorneys for Plaintiffs APA and Padgett were directed toward seeking a mandatory injunction to compel Defendants to renovate the historic Conecuh County courthouse and to prevent Defendants from undertaking actions which would result in the demolition of said courthouse. (The apparent main thrust of Plaintiffs' purpose in filing this action.) Neither the trial court nor the Supreme Court found it improper for Defendants to use the warrant proceeds to demolish the county courthouse and to construct a new courthouse. The decision by Plaintiffs APA and Padgett to pursue an appeal to the Supreme Court on this issue did not result in any benefit to the general public, and, therefore, any fees and costs billed by attorneys for Plaintiffs APA and Padgett after April 11, 2003, are found not to be in furtherance of bringing an end to an improper practice.
"Among other notable factors are the following: in a Memorandum dated June 20, 2003, from Chip DeShields, Director, to APA Executive Committee is an entry dated January 2, 2003: `Chip says he asked Alton Parker to estimate totals [sic] costs for legal fees, but has not gotten his response. He adds "Lee Warner . . . assured me that the [Alabama Historical Commission] would . . . cover all legal costs we incur."'; the entry dated January 9, 2003, in said Memorandum relates, `Letter from Lee Warner received that states, "The Executive Committee of the [Alabama Historical Commission] met . . . and unanimously agreed to join the APA and other parties in seeking a preliminary injunction and a hearing on the demolition of the Conecuh County courthouse. As part of that meeting, we discussed the need to replenish the Emergency Response Fund . . . to cover legal expenses incurred through this case. Please get with Elizabeth (Brown) and Alta (Cassady) and prepare a grant application for this purpose, to be considered at the Feb. 5th meeting of the full Commission." (see, letter dated January 9, 2003, addressed to Mr. Chip DeShields, Executive Director Alabama Preservation Alliance, P.O. Box 2228, Montgomery, Alabama, 36102 from Lee H. Warner, Executive Director, State of Alabama, Alabama Historical Commission, 468 South Pine Street, Montgomery, Alabama 36130-0900).
"It appears to this court that Spain & Gillon `relied' on Plaintiff APA for payment of all fees and costs it rendered in connection with this litigation, as the firm regularly submitted itemized Billing Statements to APA for Total Due amounts.
"The court determines that all attorneys who represented Plaintiffs APA and Padgett were experienced, capable and very able.
"Any sums paid to Spain & Gillon and/or Hyde pursuant to this Final Order are not to be construed so as to preclude said law firms from recovery of any unpaid portion of their fees and costs from their client, Plaintiff APA.
"The court further finds that all bills tendered to its client, APA, by Spain & Gillon, were reasonable and necessary. . . .
"Although this court is cognizant of the guidelines to be considered in determining the amount of an attorney fee to be awarded attorneys for Plaintiff Padgett in this case from said Defendants (see, Brown v. State, 565 So.2d 585, at 592 (Ala.1990)), such guidelines do not provide for multiple plaintiffs (especially when one is proper, but another lacks standing), multiple plaintiffs' attorneys (some of whom are entitled to a share of *1001 attorney's fees and costs, whereas it is not legally appropriate to award such to another attorney), some services provided by said plaintiffs attorneys having resulted in enjoining unlawful actions by defendants, while other substantial services provided by said attorneys not having been rendered for a purpose determined to be unlawful by either this court or by the Supreme Court.
"All of the above being considered and understood, it is, therefore, ORDERED, ADJUDGED, and DECREED as follows:
". . . .
"4. That the Alabama Preservation Alliance's Petition of An Award of Attorney's Fees and Reimbursement of Litigation Costs and Expenses is denied.
"5. That Plaintiff J.C. Padgett's Petition of An Award of Attorney's Fees and Reimbursement of Litigation Costs and Expenses is granted, and the Court hereby award's attorney's fees and expenses to Plaintiff J.C. Padgett against said Defendants (i.e., as named on pages 18-19 of the trial court's order dated February 28, 2003) in the amount of $21,901.29, for all of which, execution may issue."
Because we conclude that the trial court did not err in holding that APA lacked standing, we likewise conclude that the trial court did not err in denying APA's request for attorneys' fees and costs. Accordingly, we affirm that aspect of the trial court's judgment.
With respect to the award of attorneys' fees and costs to Padgett, Padgett argues that the trial court erred because, Padgett says, the trial court awarded him an insufficient amount; the County Commission argues that the trial court erred because, the County Commission says, the trial court should not have awarded Padgett any attorneys' fees and costs. However, we note that the decision whether to award attorneys' fees under the "common benefit" exception to the American rule precluding the recovery of attorneys' fees "is within the sound discretion of the trial court" and that the ruling on that question will not be reversed on appeal absent an abuse of discretion. Ex parte Horn, 718 So.2d 694, 702 (Ala.1998). After carefully considering the trial court's reasoning and the arguments of the parties, we conclude that the trial court did not abuse its discretion in awarding Padgett $21,901.29 in attorneys' fees and costs.
With regard to the County Commission's petition seeking forfeiture of the $25,000 deposited on behalf of APA and Padgett as security for the issuance of the TRO, the trial court stated, in pertinent part:
"In accordance with [the TRO], one of counsel of record for Plaintiffs James C. Padgett ('Padgett') and the Alabama Preservation Alliance ('APA') posted a cash bond in the sum of Twenty Five Thousand Dollars with the Circuit Clerk of Conecuh County. The records produced by the law firm of Spain & Gillon, LLC ('Spain & Gillon') reflect that a check (614) was issued to Sam Frazier on 2/27/2003 in the amount of $25,000.00 for `reimbursement for courthouse.' This confirms that the funds for the security bond were provided exclusively by Plaintiff APA.
". . . .
"Because APA had (and has) no standing to participate in the action at bar, it had no legal standing to request the injunctive relief imposed on Defendants, and, therefore, any injunction issued pursuant to APA's participation was wrongful. Since APA was the only party who provided funds for the cash bond, the court finds that APA's lack of *1002 standing is sufficient to support an award of the cash bond proceeds to the Defendants. . . . The basis of the court's award to said Defendants of the cash bond in the sum of $25,000.00 is that APA's participation in this case was wrongful, and the court determines pursuant to Rule 65.1[, Ala. R. Civ. P.], said Defendants have sustained damages as a proximate result of such wrongful participation by APA. Such damages include, but are not limited to, expenditures by said Defendants for attorney's fees and costs expended by said Defendants in defending APA's allegations and requests for relief. To paraphrase a former Chief Justice of our Supreme Court, `they paid their money and took their chances.'"
In Ex parte Waterjet Systems, Inc., 758 So.2d 505 (Ala.1999), the supreme court, in pertinent part, stated:
"Rule 65(c), Ala. R. Civ. P., requires that the party applying for a preliminary injunction give security `in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.' Thus, Alabama deviates from the analogous federal rule, Rule 65(c), Fed.R.Civ.P., to the extent that it makes attorney fees recoverable following a wrongful injunction.
"A party that is wrongfully enjoined or restrained has `a cause of action for recovery under the surety bonds posted in accordance with Rule 65(c).' Talladega Little League, Inc. v. Anderson, 577 So.2d 1293, 1296 (Ala.1991). A wrongfully enjoined or restrained party may also use Rule 65.1, which provides a motion procedure for enforcement of the liability of the surety. `In order for a party to be liable on the bond posted pursuant to Rule 65(c), the [trial] court must find that the party [enjoined] had been "wrongfully" enjoined.' Marshall Durbin & Co. v. Jasper Utilities Bd., 437 So.2d 1014, 1027 (Ala.1983). On appeal, a trial court's award of `costs, damages, and . . . attorney fees' pursuant to a security bond will not be disturbed absent an abuse of discretion. Id. at 1027.
". . . .
"We hold that a party does not have to prove bad faith to recover damages on a bond posted as a condition to obtaining an injunction. . . . Consistent with the language of Rule 65(c), we hold that in order to recover damages on a Rule 65(c) bond the party seeking recovery need only establish that he or she was wrongfully enjoined or restrained.
"Once a party establishes that he or she was wrongfully enjoined or restrained, that party has a right to recover damages and can recover those damages that are `the actual, natural and proximate result of the [wrongful] injunction.' Alabama Cablevision v. League, 416 So.2d 433, 435 (Ala.Civ.App. 1982). These damages include compensation for injury, including attorney fees, incurred as the result of the injunction. . . . If the party establishes that it was wrongfully enjoined and suffered damage and incurred costs or attorney fees as a proximate result of the wrongful injunction, the trial court must award compensation for the party's damage, costs, and attorney fees.
"This holding is consistent with the policy long recognized by our courts that a party seeking an interlocutory injunction must pay for its incorrect belief that it is entitled to such an injunction. As Chief Justice Torbert noted in his dissent in Churchill [v. Board of Trustees *1003 of the Univ. Of Alabama in Birmingham, 409 So.2d 1382 (Ala.1982) ]:
"`Our courts have stated:
"`"By filing the application and the required bond the applicant takes his chance that there may be dissolution upon motion. He has, by making the bond, entered into a contract that in the event there is dissolution the bond becomes due for damages resulting from the issuance of the injunction. Upon breach of the condition of the bond a right of action thereon arises immediately. In requesting the extraordinary relief of a temporary injunction and making the bond the applicant in colloquial language `pays his money and takes his chances.'"'
"409 So.2d at 1390 (Torbert, C.J., dissenting) (emphasis added [in Ex parte Waterjet Systems]; citations omitted).
"Although Rule 65(c) has contained the phrase `wrongfully enjoined or restrained' since its adoption, this Court has not before now had the opportunity to define that phrase. Federal courts have construed the same phrase in Rule 65(c), Fed.R.Civ.P., to mean that a party is wrongfully enjoined `when it turns out the party enjoined had the right all along to do what it was enjoined from doing.' Nintendo of America, Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032, 1036 (9th Cir.1994), cert. denied, 513 U.S. 822, 115 S.Ct. 85, 130 L.Ed.2d 37 (1994); see, also, Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1054 (2d Cir.1990) ('A party has been "wrongfully enjoined" under Fed.R.Civ.P. 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act.'); Note, Recovery for Wrongful Interlocutory Injunctions Under Rule 65(c), 99 Harv. L.Rev. 828, 836-42 (1986) (`applicant should be liable only if the injunction prohibited the other party from doing what it was legally entitled to do').
"We agree with this definition of the phrase `wrongfully enjoined or restrained.' It is a simple definition that provides clear guidance for a trial court. Furthermore, this definition requires that the trial court base the liability on the bond on the merits of the plaintiff's claim and not on some procedural defect. See Note, Recovery for Wrongful Interlocutory Injunctions Under Rule 65(c), 99 Harv. L.Rev. 828, 838-39 (1986).
". . . .
". . . The only questions a trial court must answer are (1) whether the party was wrongfully enjoined or restrained and (2) what, if any, damages the party is entitled to recover. . . . "
758 So.2d at 510-12 (some emphasis added).
In the case now before us, the supreme court ultimately held that the County Commission did not have the right to use funds generated by the court fee and the lodging tax to pay for the demolition of the existing courthouse and the construction of a new courthouse but that the County Commission did have the right to use the proceeds of the Series 2002 Warrants for those purposes. Accordingly, insofar as the TRO enjoined the County Commission from using the proceeds of the Series 2002 Warrants to pay for the demolition of the existing courthouse and the construction of a new courthouse, the County Commission "`had the right all along to do what it was enjoined from doing.'" Ex parte Waterjet, 758 So.2d at 512 (quoting Nintendo of America, Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032, 1036 (9th Cir.1994)). On the other hand, insofar as the TRO enjoined the County Commission from using funds *1004 generated by the court fee and the lodging tax to pay for the demolition of the existing courthouse and the construction of a new courthouse, the County Commission did not "`ha[ve] the right all along to do what it was enjoined from doing.'" Id. Thus, under the test enunciated in Ex parte Waterjet, the TRO was wrongful insofar as it enjoined the County Commission from using the proceeds of the Series 2002 Warrants to pay for the demolition of the existing courthouse and the construction of a new courthouse, and it was rightful insofar as it enjoined the County Commission from using the funds generated by the court fee and the lodging tax for those purposes.
Moreover, under the test enunciated in Ex parte Waterjet, the fact that two parties, the Alabama Historical Commission and Padgett, had standing to obtain the TRO did not make rightful that portion of the TRO enjoining the County Commission from using the proceeds of the Series 2002 Warrants to pay for the demolition of the existing courthouse and the construction of a new courthouse. Logically, therefore, the lack of standing of APA to obtain the TRO could not make wrongful that portion of the TRO enjoining the County Commission from using the funds generated by the court fee and the lodging tax for those purposes. The County Commission had no right to use the funds generated by the court fee and the lodging tax for those purposes regardless of whether APA had standing. Therefore, the rationale of the trial court that the TRO was wrongful because APA lacked standing is erroneous. Likewise, the trial court erred in concluding that the County Commission was entitled to recover all the attorneys' fees and costs that it incurred "in defending APA's allegations and requests for relief." Under the holding in Ex parte Waterjet, the correct measure of the County Commission's damages is "those damages that are `the actual, natural and proximate result of the [wrongful] injunction.'" Ex parte Waterjet, 758 So.2d at 511(quoting Alabama Cablevision v. League, 416 So.2d 433, 435 (Ala.Civ.App.1982)).
Accordingly, we reverse the trial court's judgment insofar as it forfeited the $25,000 deposited on behalf of APA and Padgett as security for the issuance of the TRO and remand the case to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., concurs.
PITTMAN, J., concurs in the result, without writing.
THOMPSON and MURDOCK, JJ., concur in the result in part and dissent in part, with writings.
THOMPSON, Judge, concurring in the result in part and dissenting in part.
I agree with Judge Murdock's dissent as to the main opinion's affirmance of the trial court's judgment in so far as it determined that APA lacked standing and was not entitled to an award of attorneys' fees and costs. I concur in the result as to the remainder of the main opinion.
MURDOCK, Judge, concurring in the result in part and dissenting in part.
In this case, the trial court entered a judgment in favor of Alabama Preservation Alliance, Inc. ("APA"), and against the Conecuh County Commission and other defendants. No issue was raised as to the standing of APA to assert the claims decided in its favor by that judgment. The trial court's judgment was appealed to the Alabama Supreme Court; no issue as to APA's standing was raised in that appeal. That appeal resulted in the affirmance of the decision of the trial court, giving final, res judicata effect to a judgment obtained by APA against the defendants. See Padgett *1005 v. Conecuh County Commission, 901 So.2d 678 (Ala.2004). There is no issue in this case regarding the reopening of that judgment. I therefore respectfully dissent as to the main opinion's affirmance of the trial court's determination that APA lacked standing and was not entitled to an award of attorney fees.
In addition, because I believe the trial court improperly reduced the amount of attorney fees and costs awarded to James Padgett, I respectfully dissent from the main opinion's conclusion that the trial court did not abuse its discretion in awarding Padgett only $21,901.29 in attorney fees and costs.
I concur in the result as to that portion of the main opinion addressing the forfeiture of the $25,000 bond posted by APA on behalf of itself and Padgett.
NOTES
[1] The other defendants are County Commissioners Hugh Barrow, Jerold Dean, D.K. Bodiford, Wendell Byrd, and Leonard Millender; the Conecuh County Public Building Authority and its members, Billy G. Mims, Sr., W.J. Reed, and Alice Ann Baldwin; and Harry Still, the Conecuh County Administrator.
[2] Subsequently, the State of Alabama intervened as an additional plaintiff. The Alabama Historical Commission and the State are not parties to this appeal.
[3] See the "Official Recompilation of the Constitution of Alabama of 1901, Local Amendments," Conecuh County, § 1.